BENJAMIN SMITH *et al.*, plaintiffs in error, *v.* SIMMONS SACKETT *et al.*, defendants in error.

*Error to Winnebago.*

Where land is bought by one person, with the money of another, and title made to the former, there is a resulting trust in favor of the latter and his heirs.

L. M., wishing to purchase a tract of land, borrowed in 1839 a sum of money of B. S., and used it to purchase the land, the title being made to S. S. in trust to secure the loan, and S. S. giving a bond to L. M. and E. M., conditioned to convey them the land on re-payment of the loan with interest in two years. Before the two years had elapsed L. M. died, leaving an infant, his heir. In 1846 S. S. sold the land, and it was again sold, but all the purchasers were chargeable with notice of the interest of the infant. The infant then filed his bill, making all persons interested parties, and praying for an account, and to redeem, and that the land might be mortgaged or sold in order to raise the means of redeeming. The bill stated that the infant had no means of redeeming but through this property. *Held,* that a demurrer to the bill was improperly sustained; that the Court should order an account to be taken to determine the amount of the incumbrances, and that the money be raised by a sale or mortgage of the premises, or in such other appropriate way as may be most for the interest of the infant, and applied to the extinguishment of the encumbrances.

In a case of this character, a tender is not necessary before filing the bill.

The jurisdiction of a Court of Equity to order the sale or mortgage of either the legal or equitable estate of an infant whenever his interest requires it, is indisputable.

*Laches* is not imputable to an infant.

A person interested in the subject matter of a suit in Equity, refusing to join with the complainant, may be made a defendant, though his interest is with the complainant.

BILL IN CHANCERY, in the Winnebago Circuit Court, filed May, 1846, by Benjamin Smith, Margaret Smith, his wife, and Levi Moulthrop, plaintiffs in error, against Simmons Sackett, Benjamin Sackett, Erastus Moulthrop, Horace Miller, Gardiner C. Miller, and Hiram Waterman, defendants in error, and heard at the October special term, 1848, before the Hon. Jesse B. Thomas. The defendants below demurred to the bill: the demurrer was sustained, and the bill dismissed. The complainants below sued out their writ of error.

The bill stated that in 1839 Levi Moulthrop, now deceased, being in possession of a tract of land on which he had made valuable improvements, and desiring to purchase the same at the government sales, sent Erastus Moulthrop to

Connecticut to negotiate a loan. The latter proceeded to Connecticut and made arrangements for the loan with Benjamin Sackett, who sent his brother, Simmons Sackett, to attend the sales and take the legal title to the land in his own name, to secure the payment of the loan. The sum advanced for the purchase of the land, was $523·77 ; but in addition to this sum, the Sacketts were to be reimbursed their expenses. The land was bought, the title taken by Simmons Sackett, and a written contract thereupon entered into between Simmons Sackett, of the one part, and Levi and Erastus Moulthrop, of the other part, by which the latter promised to pay to Benjamin Sackett $650·00 with interest in two years, and to Simmons Sackett $30·00 within the same time, and Simmons Sackett on his part bound himself to convey the land to the Moulthrops on payment of these sums. Subsequently Levi Moulthrop married complainant Margaret, and soon afterwards died, leaving his widow pregnant with complainant Levi, to whom she afterwards gave birth, he being the sole heir of Levi Moulthrop, deceased. The bill also set forth various negotiations between Mrs. George, the mother of complainant Margaret, acting in behalf of Margaret and her infant son, and the two Sacketts, which it is not necessary to state. The bill also stated that the infant complainant, Levi Moulthrop, had no property except this land, out of which the means of redeeming this land could be raised. The bill prayed for a decree declaring the rights of the complainants ; that an account be taken of the money chargeable on the land ; that a reasonable time be allowed to pay it, in order to redeem ; that complainant Margaret be authorized to raise the sum by mortgaging the land, selling the timber, or, if necessary, by selling the land ; and also prayed for general relief.

A supplemental bill stated a conveyance subsequent to the filing of the original bill, by S. Sackett to Horace Miller, and by Horace Miller to Gardiner C. Miller and Hiram Waterman, and made these persons parties.

*Burnap*, for plaintiffs in error.

I. The complainants claim that the original transaction between the decedent, Levi Moulthrop, and the Sacketts, was one of loan and mortgage.

II. Levi Moulthrop, deceased, had a resulting trust in the land.

1. By means of the loan from Benjamin Sackett, the money advanced by him became Moulthrop's, before it was invested in the land, and its investment created a resulting trust in the land in his favor, subject only to a lien for the re-payment of the money and interest, by the arrangement of the parties. *Page* v. *Page*, 8 N. H. 187. *Boyd* v. *McLean*, 1 J. C. R. 582, 591, 594.

2. The pre-emption right, improvements, and claims of Moulthrop upon the public lands, were a sufficient consideration to raise a resulting trust. *Miller* v. *Davidson*, 3 Gilm. 526; *Switzer* v. *Skiles*, ib. 532–33, and cases there cited ; Lewin on Trusts, 169. The payment of money is not the only foundation for a resulting trust. *Malir* v. *Malin*, 1 Wend. 681. Courts exercise great liberality in favor of resulting trusts. ib. 638.

3. The claim of Moulthrop to the lands was the main object ; the foundation of the whole thing. The obtaining of the land and getting the government title, were auxiliary and accessory. *Principale trahit ad se accessorium.* 1 U. S. Annual Dig. 365. *Miller* v. *Davidson*, 3 Gilm. 525, 527.

4. When a contract of mortgage is once made, any subsequent deed or assurance by the mortgagor tending to perfect the title, enures under the mortgage, and not absolutely. Even a fine levied has that effect. Coote on Mortgage, 130, 131, 132. The decedent verbally agreed that his right under the pre-emption laws should pass to Simmons Sackett, and his claim was treated in the same way. He and Simmons Sackett went to the land sale and concurred in carrying this agreement into effect. This was the only mode of transferring his title which the case admitted of, and for the purposes of the bill must be considered as an assurance

subordinate to the contract of mortgage. The pre-emption and claim merged in the title of Simmons Sackett. *Miller* v. *Davidson,* 3 Gilm. 518.

III. When the question is whether mortgage or not, the Courts always establish the mortgage claim as being most just and beneficial in its operation, unless the circumstances of the case clearly show the intention of the parties to have been otherwise. *Conway* v. *Alexander,* 2 Peters' Cond. R. 479.

IV. Simmons Sackett, whether considered as the holder of a mortgage interest, or of land subject to a resulting trust, could not be allowed to deal with the property for his own benefit, or derive any profit from his trust, or subject the lands to any new charge, to impede the redemption. Lewin on Trusts, 288, 289, 290. 1 Story's Eq. Jur., 317, 318. *Miller* v. *Davidson,* 3 Gilm. 527.

Horace Miller, Gardiner C. Miller, and Waterman, having purchased with full knowledge of the case, cannot be in any better predicament than Simmons Sackett. Possession of complainants was notice to them. Their condition is even worse, for they have, or at least Horace Miller has, been most active in bringing about the fraudulent transfer.

V. Horace Miller, Gardiner C. Miller and Waterman are liable to account for the rents and profits which they have derived from the land.

VI. If the defendants contend that the transaction between decedent and Simmons Sackett was one of contract for sale, and not in the nature of a mortgage, the complainants still have equity.

Whether the purchaser must in all cases pay the purchase money under a contract of sale, before filing a bill for conveyance, is a vexed question, about which the decisions have not been uniform. It must doubtless be done, unless there be special circumstances to excuse it. *Doyle* v. *Teas,* 4 Scam. 202, upon the whole, is not inconsistent with this position, although in that case tender should have been made. A fixed rule on this point would deprive Courts of Equity of some of their most beneficial powers, and open wide the door to all manner of fraudulent contrivances to prevent the pur-

chaser from availing himself of his rights. 2 Story's Eq. Jur. 46, § 742.

Equity, in case of contract for sale and conveyance of lands, regards the true object of the parties, and treats them as mutual trustees; the purchaser, of the money, and the vendor, of the land.. A decree for a specific performance is a matter of course, unless there has been gross *laches* on the part of the purchaser. 2 Story's Eq. Jur. 81, § 771 ; 83, § 776. and note ; 85, § 776.

There has been no negligence on the part of the complainants. They did not lie by, to speculate on events, as was the conduct of the complainant in *Doyle* v. *Teas*, 4 Scam. 267 ; but they kept possession of the property, and did all in their power to raise and pay the money due, and always manifested an intention to insist on their claim. The heir of the decedent, on whom the equitable fee descended, being an infant of tender years, could not exercise any control in the matter.

*Marsh* and *Wight*, for defendants in error.

Although the bill in this case is anomalous, not only presenting a case not usually found in proceedings in Courts of Equity, but insisting upon such relief as no Court has ever extended to any party, and the complainants' counsel has not seen fit to specify in what category it belongs, yet the defendants have a right to insist that it shall be considered and adjudged by some known and settled principles which Courts of Equity have adopted.

Whether, therefore, the complainants are seeking to enforce a specific performance, or to establish a resulting trust, or to claim the benefits of the relation of mortgagor and mortgagee, we insist that, in either case, they have not shown themselves entitled to the relief claimed.

It is a principle well defined by the elementary writers, and enforced by all Courts, that when a party comes into a Court of Equity to claim its special aid, he must show that he is in a condition to perform his own part of the contract, and that he has shown himself ready, desirous, prompt, and

eager to perform. Courts of Equity have regard to time, so far as it respects the good faith and diligence of the parties. 2 Story's Eq. Jur. 6–7, § 776. It is not sufficient alone to show the adverse party in default, but the party complaining must show that he is not liable to the same imputation, or in other words, the complainant must come into Court with clean hands. A Court of Equity will only compel a party to act where it is his duty to act without their interference. *Doyle* v. *Teas,* 4 Scam. 265–6.

But whatever relief the proper parties might under other circumstances have had, or might even now have, under the contract set forth in the bill, we insist that the complainants have entirely misconceived their rights, in any event. Sackett never made any contract at all with Levi Moulthrop. Whatever contract he made in the premises he made with Levi and Erastus Moulthrop; and if any rights have accrued to any person and now exist under that contract, they enure equally and jointly to the benefit of E. Moulthrop; and he should be complainant here instead of defendant.

The counsel for the plaintiffs has introduced a large number of authorities to demonstrate the incidents of, and the principles established by, Courts of Equity, growing out of resulting trusts.

To the doctrine established by these cases, we make no objection. But is this a resulting trust? Has it any of the elements, any of the characteristics of a resulting trust? A resulting trust is where one man purchases land or property in his own name (taking the legal title) with the money or property of another, furnished for that purpose.

In such cases the Courts of Equity, in view of the stern rule of the Statute of Frauds, and in absence of other than parol evidence, granted relief, and established the doctrine of resulting trusts. *Botsford* v. *Burr,* 2 J. C. R. 404; *Steere* v. *Steere.* 1 do. 1.

But here the Court is called upon to create a resulting trust, where no money or other consideration was ever paid by the *cestui que trust;* where the property of which the trustee acquired the title by his own money, was government

land and purchased by him of the government, at public land sale, Moulthrop having no interest, and, as the bill shows, having no power to acquire an interest, in it; and moreover, where the parties themselves have by their written contract, declared whatever there is of a trust in this case.

We say, then, look to the bond. Whatever rights the parties have under their contract, let this Court enforce; the defendants will be content.

It is however insisted, on the part of the defendants, that not only from the terms of the original contract, but from every incident of the subsequent negotiations, the only legitimate inference is, that the parties then, and always, have understood their contract to be no more or less than an agreement to sell.

If this view of the case be correct, then it follows that the time for fulfilling the contract having so long since expired, the plaintiffs having slept upon their rights, and been guilty of such gross negligence, they are not entitled to any relef, and much less, to the aid of this Court to restore to them their lost rights, whatever they may have been.

A Court of Equity will not vary the terms of a contract, or the intentions of the parties, so as to give one party the benefit of an extension in point of time, for which he has not stipulated; nor to restore to a party a privilege dependent upon payment of money at a stated time, where that privilege is lost by failure to pay. *Robinson* v. *Cropsey*, 2 Edw. Ch. R. 146–8; *Doyle* v. *Teas*, 4 Scam. 225.

But as a dernier resort, it is insisted on the part of the complainant, that if this case is unlike every thing else known in Equity proceedings, surely it bears some resemblance to the case of mortgagor and mortgagee; and numerous authorities have been cited, not only to show that the contract in this case was a mortgage, but that the complainant can have some relief. We do not dispute the doctrine of "once a mortgage, always a mortgage;" nor but that Courts of Equity have gone very far, to give to contracts the effect of a mortgage, even where the parties did not so understand their own agreement; especially where great injustice would

Smith *et al, v.* Sackett *et al.*

otherwise result. But in no case cited does it appear, that the grantor claimed to be a mortgagor of property to which he neither had nor could have any title, as in this case.

Those cases are all based upon the making of an absolute conveyance, with a simultaneous agreement, on the part of the grantee, to re-convey on certain conditions.

But even in such cases, it is not every agreement to re-sell that the Courts will determine to be a mortgage. And wherever it is manifest that the parties intended to make a defeasible sale, and not a mere mortgage, a Court of Equity will leave the parties to the consequences of their intentions. *Robinson* v. *Cropsey*, 2 Edw. Ch. R. 146.

But suppose the relation of mortgagor and mortgagee to exist, wherein have the complainants shown themselves entitled to the relief asked for? They must show a "prior tender of the money, and a refusal to accept it," and an offer "in express terms, to pay the amount due, with costs." *Beekman* v. *Frost*, 18 Johns. 559, 570.

It may be unfortunate for the complainants that they are poor, as is alleged in their bill; but poverty is not a good reason why this Court should take the defendants' property, and place it beyond their reach, for the special benefit of the complainants. *Goldsmith* v. *Osborne*, 1 Edw. Ch. R. 562.

Nor can it now avail the plaintiffs to insist upon some other relief, if they have asked for too much, or asked amiss. For relief, inconsistent with the specific relief prayed for, will not be granted under the general prayer. *Beekman* v. *Frost*, 18 Johns. 562.

In further illustration of the questions presented in this case, *vide* 2 Johns. Ch. R. 405; 4 do. 75, 140; 5 do. 1; 6 Paige, 480; 2 Story's Rep. 620.

*Burnap*, in reply.

The Courts on a bill to redeem, always give a day for the payment of the money, as is shown by the rule that if the day fixed for payment passes without payment, it is equivalent to a foreclosure. The cases quoted by the counsel for the defendant, show the giving of a day of payment. 18 Johns. 561.

*Beekman* v. *Frost*, 18 Johns. 559, 570, does not require a previous tender. In *Goldsmith* v. *Osborne*, 1 Edw. 560, in which the Court say that the complainant's poverty cannot excuse him from offering to pay the money due in order to have relief, the Court assign as a reason, that he can sell his equity of redemption, without the interference of a Court of Chancery.· In the case at bar, this cannot be done, because the equitable fee has descended upon an infant; and we ask the Court to do for him, what an adult might do for himself.

The Opinion of the Court was delivered by

CATON, J. By the application of a few well understood rules of Chancery Law, no difficulty can be experienced in determining the sufficiency of the case presented by the original and amended bills. If this were to be considered purely as a bill to redeem from an equitable mortgage, as such, it would be manifestly insufficient; for it is, under ordinary circumstances, essential to such a bill that it contain an offer, clearly expressed, to pay the redemption money. 18 Johns. 560, 570. The case made here, however, presents itself to the Court upon other and broader grounds. This is an application to the Court, on behalf of an infant, for an order to dispose of a part of the infant's estate for the purpose of removing an incumbrance upon it; and that such estate may bring its full. value in the market, or may be made available for the objects proposed without a sacrifice, it becomes necessary that the Court should determine the nature and extent of the infant's interest in the premises. Notwithstanding the bill is voluminous, all that is really essential to a full understanding of the equities as presented by the bill, so far as is necessary for the decision of the case, can be stated in few words.

It appears that in 1839, Levi Moulthrop was the owner of valuable improvements on several tracts of public land, which are now the premises in controversy, which he was desirous of purchasing of the government; and in order to procure the necessary funds for that purpose, he sent the defendant Erastus Moulthrop to Connecticut, who negotiated

a loan with the defendant Benjamin Sackett, for the sum of $530·00, on a credit of two years. It was a part of this arrangement that Simmons Sackett should come from Ohio to Illinois to see to the investing and security of the money, and that his expenses and a reasonable compensation for his services should be considered as a part of the loan, and secured upon the land. In pursuance of that arrangement, the land was purchased by Simmons Sackett, and the title taken in his own name in trust for the purpose of securing the loan, and he executed a bond to Levi and Erastus Moulthrop, conditioned for the conveyance of the premises to them upon the payment of $630·00 with interest in two years. No very clear reason is given in the bill, showing why the name of Erastus was put in the bond with that of Levi, and whether the averments of the bill are sufficient to show that the whole transaction was for the benefit of Levi, it is not necessary now to determine. Within a year after this, Levi Moulthrop died, leaving the complainant Margaret his widow, and shortly after his death was born the complainant Levi Moulthrop, who is his only heir at law. The bond for a deed was in the possession of Levi Moulthrop at the time of his death, of which Erastus soon after improperly obtained the possession, and afterwards delivered it up to Benjamin Sackett. A long history of negotiations is related in the bill, which took place between the friends of the infant and the Sacketts after the death of Levi Moulthrop, which we do not deem it necessary to notice. Horace Miller, in 1846, purchased and received a conveyance of the lands from Simmons Sackett, and afterwards conveyed to Gardiner C. Miller and Hiram Waterman, all of whom were chargeable with notice of the infant's interest. The statements of the bill are admitted to be true by the demurrer, which was sustained by the Circuit Court, and the bill dismissed.

That the infant, Levi Moulthrop, has an equitable interest in these lands, if the statements of this bill are true, does not admit of controversy. The money with which the land was purchased, was loaned to his ancestor by Benjamin Sackett, and the title vested in Simmons Sackett to secure

the re-payment of the loan. The money of Levi Moulthrop purchased the land, and the law will raise a resulting trust in his favor. So far as the rights of the infant in the land are concerned, this case is identical in principle, with those of *Boyd* v. *McLean*, 1 Johns. Ch. R. 582, and *Page* v. *Page;* 8 New Hamp. 187. Where the facts are admitted, as they are in this case, to enter upon a discussion, or to refer further to authorities to prove that the law will raise a resulting trust in favor of one to whom the loan was made, and for whom the land was purchased, would be a work of supererogation. If it were important to determine now the exact extent of the complainant's rights, it might be neces- sary to refer more particularly to the precise statements of the bill. For the present purpose it is sufficient that the infant has rights there, which it is the duty of the Court to protect. That these lands were incumbered for the re-pay- ment of the money advanced to procure the title from the government, cannot be denied; but when that is paid, neither the Sacketts, nor the Millers, nor Waterman, have any further interest in the land. Nor, as the case stands now, can the infant be charged with those extraordinary expenses that have been incurred in the course of the va- rious negotiations, which have transpired since the death of his father, and which have swelled the amount now claimed to near $1200·00. Neither the mother of the infant, nor Mrs. George, nor any other person, had a right so to inter- meddle with the infant's interest as to create incumbrances upon it. No guardian seems ever to have been appointed for the infant, nor would a guardian have been allowed to have embarrassed or trifled with the infant's estate, without the express order of the Court. The Court of Equity is the general guardian of all infants within its jurisdiction, and it is one of its most sacred duties to watch with a vigilant eye, and see that their rights and interests are not trifled away or sacrificed, and that they are not made the prey of either their own kindred or strangers. They are incapable of pro- tecting their own interests, and hence cannot be guilty of *laches.* *Davis* v. *Harkness*, 1 Gilm. 178.

Whether the complainant Margaret, after she attained her majority, further incumbered whatever interest she has as the widow of Levi Moulthrop, deceased, it is unnecessary for us now to inquire.

The jurisdiction of the Court of Chancery to order the sale of the whole, or a portion of the estate of an infant, or to order it to be incumbered by mortgage whenever the interest of the infant demands it, will not be denied, whether that interest be of a legal or an equitable nature. Such is one of the objects of this suit, and it certainly seems that the case made by the bill shows a strong necessity for the exercise of that power. As I have already shown, the infant has an equitable interest in this land of considerable value, for the property is averred to be worth scme three thousand dollars. The interest of the infant manifestly requires that the lien or incumbrance upon the estate should be discharged. The bill shows that the infant has no property or means out of which the necessary funds can be raised to discharge this incumbrance, except the property itself. The very statement of the case demonstrates the necessity of the interposition of the Court. But before the Court will order a sale of the infant's interest, it must ascertain that he has an interest there, and also the nature, character and extent of that interest. This is necessary for the double purpose of securing the full value of the portion sold, and to see that it is not infringing upon the rights of others. Hence the necessity of bringing all parties who appear to be interested either legally or equitably in the estate before the Court, that they may assert and defend their rights. But it is objected that as Erastus Moulthrop's interest appears to be with the complainants rather than against them, he should have been joined with the complainants instead of being made a defendant. But this is not so. If he did not choose to unite with the complainants, it is hardly necessary to say that it was the proper course to make him a defendant. He was then properly before the Court, and bound to look after his interests, whatever they were. All parties being before

the Court, and a case being made which requires its interposition in order to protect the rights of the infant, in the exercise of its proper jurisdiction for that purpose, it must determine what was the nature of the original transaction.

This, as we have before seen, was in the nature of a mortgage, or security for a loan of money, and as a necessary incident, the Court must determine the amount of the incumbrance. This, too, it has the means of doing properly, for all the parties are before it who will be interested in taking the account. This is indispensably necessary, also, in order to enable the Court to determine how much money shall be raised out of the infant's estate. When this is done, the Court will, as a matter of course, direct the proper application of the fund thus raised, in extinguishment of the lien. Thus will the Court, having properly acquired jurisdiction, not only of the subject matter, but of all the parties interested, do complete justice between all. It is for the very purpose of thus doing ample justice, that Courts of Equity require all parties interested to be brought before them. This very case shows the propriety of the rule, that when the Court once acquires jurisdiction of a cause, it will retain it so as to do complete justice to all interested. It would be unreasonable and vexatious for the Court now to say, that it will ascertain and determine the rights of the parties, and will order the necessary funds to be raised to discharge the lien, and then stop short without directing the proper application of the funds. Should the Court, with all the means before it of closing the whole affair at once, with justice to all, refuse to settle it in this proceeding, and require another bill to be filed after the complainants are able to make a more formal offer to redeem? Such a proceeding would be equally detrimental to both parties, and in manifest violation of one of the plainest rules of Equity. Of what benefit could it be to the defendants to be brought in to defend another suit, when all the questions in controversy had been already settled in this? The very statement of the proposition shows its impropriety. The misapprehension consists in supposing that the primary

object of the bill is to redeem. That is not so. The first and great object of the bill is to invoke the aid of the Court to raise a fund out of the infant's estate to redeem with, in order to do which properly, it is indispensable to settle the rights of the parties, and when this is done, it follows as an incident, that the fund thus raised shall be applied, and the incumbrance discharged.

The view which we take of the case, shows that the authorities referred to, proving that a tender must be made and the money brought into Court, when it is called upon to enforce a specific performance of an agreement for the sale of land, do not apply. Were the incidental although ultimate object to be accomplished, the specific performance of such an agreement, instead of the satisfaction and removal of an incumbrance, justice would seem to require the application of the same rule.

Without this, there would be a wrong without a remedy. We should be loth to admit that the power of the Court is inadequate to protect the rights of the infant, and yet such would be the case were we to hold that the Court cannot grant relief in this case. The Court must do for the infant, all that an adult could do for himself, without imputing to him neglect for not having acted when he was incapable of acting. If the defendants were not satisfied with the procrastination, they should have brought the infant before the Court, and asked its interference. The kind of relief here indicated is asked for in the prayer of the bill, but whether the Court will order the money to be raised by a sale or a mortgage of the estate, or in some other appropriate way, the Court will determine at the proper time, as may seem most for the interest of the infant. We have no doubt but a proper case for relief is substantially made out by the bill, and that the demurrer was improperly sustained.

The decree of the Circuit Court is reversed with costs, and the suit remanded, with leave to the defendants to withdraw their demurrer and answer to the merits of the bill as they shall be advised.

*Decree reversed.*