' ROBERT GORMAN *et al.*

*v.*

DANIEL P. MULLINS *et al.*

*Opinion filed April 21, 1898.*

1. EQUITY—*equity has power to order change of minor's property from real to personal.* A court of equity, by virtue of its general jurisdiction over the estates of minors, has power to authorize the conversion of such minor's property from real to personal or personal to real, where such conversion is clearly to their interests.

2. SAME—*what facts sufficient to authorize conversion of minor's property.* The depreciation in rental value of real estate from $250 per month at the time of the testator's death to a sum barely sufficient to pay taxes, insurance and repairs, a corresponding depreciation in market value and a probable still further depreciation before the minors, who were to take the fee on coming of age, could attain majority, are sufficient grounds to authorize a court of equity to order the sale of the property for a fair cash value and the investment of the proceeds in interest-bearing securities.

3. PRACTICE—*chancery—evidence may be preserved by recitals in decree.* Since the passage of the act allowing oral testimony in chancery cases, the practice of preserving evidence in the record by recitals in the decree has been approved in this State.

MAGRUDER, J., dissenting.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

Dennis S. Mullins died testate August 12, 1884, seized of the following described property: Lots 1, 2, 3 and 4, in Martin's subdivision of the west part of block 12 of Butler, Wright & Webster's addition to Chicago, in the county of Cook and State of Illinois, which constituted the entire estate of said Dennis S. Mullins. The testator disposed of his property by his will, as follows:

"I give, devise and bequeath all my property, real and personal, to my sister, Mary E. Gorman, and my brother, Daniel Mullins, in trust, to have and to hold the same and lease the real estate, pay the taxes and to keep the property insured, and to divide the annual net rents and income of my property, real and personal, equally between them, the said Mary E. Gorman, Daniel P. Mullins, and my brother, James Knox Mullins, and my half-brother, P. J. Malone, annually, until my niece, Mary Mullins, daughter of Daniel P. Mullins, and my nephew, Robert Gorman, shall arrive at the age of twenty-one, and when they arrive at the age of twenty-one years of age I direct my executors to turn over all of my property, real and personal, to my said niece, Mary Mullins, and my nephew, Robert Gorman, to whom I give all my property, real and personal, the income only to go to my sister, Mary Gorman, and my brothers, Daniel P. Mullins, James Knox Mullins, and my half-brother, P. J. Malone, as I have hereinbefore provided."

The trustees were named as executors, and the giving of bonds was dispensed with.

Through the death of Patrick J. Malone, which occurred on June 12, 1896, leaving his three surviving beneficiaries under the will his only heirs, and by deed from James Knox Mullins dated September 4, 1896, the trustees became entitled, in their own right, to all the net income to be derived from the property until the same

should fall into the hands of the testator's nephew and niece. The nephew and niece, who are the plaintiffs in error, are, respectively, son and daughter of the defendants in error, the trustees, and are aged, respectively, about eighteen and nineteen years.

On September 12, 1896, the trustees filed their bill, naming the plaintiffs in error as defendants, alleging that the buildings consist of dwellings; that the location has changed, since the death of testator, from a first-class into a poor residence district; that testator made the will believing that the rental value of the land would remain the same during the minority of the nephew and niece, "but that the rental value of said land has so decreased that it has now no rental value whatever, it being impossible to rent said dwellings to advantage, and the rents collected therefrom being now barely sufficient to pay the taxes, repairs and insurance thereon; that since the death of said Dennis S. Mullins said property has decreased greatly in value, and is liable to decrease more before said minors arrive at their majority; that said property, if sold, could be used for manufacturing purposes, and is now of the fair cash value of $15,000, and it is for the interest of all parties concerned that said property be sold and its proceeds invested in interest-bearing securities." The bill prays that the complainants therein be authorized to sell and convey the land in fee simple, for a price not less than $15,000, and to invest the proceeds in interest-bearing securities for the benefit of the complainants and the defendants.

A decree was entered finding the facts to be substantially as set forth in the bill, and directing the land to be sold by the trustees after having given bond for the due execution of the trust, the proceeds "to be invested and held by them until said Robert Gorman and Mary Mullins have both reached the age of twenty-one years, when said trustees shall turn over to said Robert Gorman and Mary Mullins, in equal shares, the proceeds of the sale

of said lands, without interest." To reverse the decree of the Superior Court Robert Gorman and Mary Mullins, to whom the property was devised in fee, have sued out this writ of error.

YOUNG, MAKEEL & BRADLEY, for plaintiffs in error.

LOUIS BOISOT, Jr., for defendants in error.

Mr. JUSTICE CRAIG delivered the opinion of the court:

The only question involved in this case is, did the Superior Court, under the evidence, have power to authorize a sale of the real estate described in the bill of complaint, held in trust for the minors, Robert Gorman and Mary Mullins, and the re-investment of the proceeds? The ground upon which equitable relief is asked by the trustees and executors in the bill is, that at the time of the death of the testator, Dennis S. Mullins, the rental value of the lots and several dwelling houses was $250 per month, but that locality, owing to the proximity of several large manufacturing establishments and the migration of population to other parts of the city, has changed into a very poor residence district; that the rental value of said land has decreased until it had then no rental value whatever, it being impossible to rent the dwellings to advantage, and that the rents were barely sufficient to pay the taxes, repairs and insurance thereon, and that the property had decreased in value since the death of Dennis S. Mullins, the testator, and is liable to decrease more before said minors arrive at their majority; that said property, if sold, could be used for manufacturing purposes, and is now of the fair cash value of $15,000, and that it is for the interest of all parties concerned that said property be sold and its proceeds invested in interest-bearing securities.

Counsel for plaintiffs in error, in their argument, urge that it must appear to be necessary for the maintenance

of the persons of the infants before the conversion of the property can be ordered,—that it is an essential element to the jurisdiction of the court. The prevailing doctrine in England appears to be, that courts of equity have no power, by virtue of their general jurisdiction over minors, to order the sale of a minor's real estate for the purpose of education, maintenance or investment; but many of the courts of this country have refused to follow the English rule, and have held "that where it is for the benefit of the minor, courts of equity have the power, by virtue of their general jurisdiction over the estates of minors and others under disability, to authorize a change from real to personal and from personal to real." (*Huger* v. *Huger*, 3 Dessaus. 18; *In re Salsbury*, 3 Johns. Ch. 347.) In *Snowhill* v. *Snowhill*, 3 N. J. Eq. 20, the court said: "Courts of equity may, and not infrequently do, change the character of property. They will permit trustees or guardians to do it when it is manifestly for the advantage of the infant. They will convert the property of a lunatic from real into personal for his interest,—and this has frequently been done without reference to the contingent interests of real or personal representatives." In *Smith* v. *Sackett*, 5 Gilm. 534, this court said (p. 545): "The jurisdiction of the court of chancery to order the sale of the whole or a portion of the estate of an infant, or to order it to be encumbered by mortgage, whenever the interest of the infant demands it, will not be denied, whether that interest be of a legal or an equitable nature." The authorities on this question were thoroughly reviewed in the case of *Hale* v. *Hale*, 146 Ill. 227, which involved large property interests. It was there said (p. 253): "We need therefore only add, that the power of courts of chancery, by virtue of their general jurisdiction over the estates of infants, to authorize the conversion of their real estate into personal, where it is clearly for their interest that such conversion should be made, is not only supported by the general current of authority in this

172—23

country, but is so thoroughly settled by the former decisions of this court as to be no longer an open question in this State."

The Superior Court, in the exercise of its general chancery jurisdiction, having power to authorize the sale of the property in question, were the facts in this case such as to justify the decree? The record contains no certificate of evidence, but the facts found by the court are stated in the decree, and from the facts thus found the allegations in the bill are fully sustained by the evidence. The decree finds, from the evidence, that the land is improved with several dwelling houses, which, at the time of the death of the testator, Dennis S. Mullins, were of the rental value of $250 per month, but which are now of no rental value whatever; that the part of the city of Chicago in which said land is situated has changed, since the death of the testator, from a first-class residence district into a very poor residence district; that the value of said land has decreased greatly since testator's death, and is liable to decrease still more before said minors arrive at their majority; that said land is now of the fair cash value of $15,000, and that it is for the interest of all parties to the suit that said land be sold and its proceeds invested in interest-bearing securities; that under the terms of the will the title to said lands is vested in complainants, as trustees, in fee; that the only persons now interested in said trust are the respective complainants and defendants, and that it is for the best interest of all the parties thereto that said lands be sold and the proceeds derived from such sale be held in place of said lands and invested by the complainants, subject to the same trust upon which the lands are now held by them. The decree carefully protects the rights of the minors by requiring a bond, and the court reserves to itself the power to give further directions, at any time, for the proper accounting for such proceeds by said trustees. From the evidence recited in the decree it is apparent

that the holding of the property will be disastrous to the minors, as it has decreased in value since the testator's death and is still decreasing in value, while it has no rental value whatever. After a careful examination of the evidence as recited in the decree we are satisfied that it is manifestly for the interest of the minors that the conversion of the property should be made, and that the Superior Court, in the exercise of its chancery jurisdiction, properly authorized the change to be made.

Plaintiffs in error question the form in which the evidence is preserved in the record. The practice of preserving the evidence by recitals in the decree has been expressly approved by this court since the passage of the act allowing oral testimony in chancery causes. *Walker* v. *Carey,* 53 Ill. 470; *Cooley* v. *Scarlett,* 38 id. 316; *Moore* v. *School Trustees,* 19 id. 83.

The decree is affirmed.                    *Decree affirmed.*

Mr. JUSTICE MAGRUDER, dissenting.