<hr />

KELLY *et al. v.* NEVILLE *et al.*\*

(Division B. Oct. 27, 1924.)

[101 So. 565.  No. 24137.]

1. INFANTS. *Chancery court may sell minor's deteriorating estate for reinvestment.*

Section 159 of the Constitution of this state confers on the chancery court full jurisdiction of "(a) All matters in equity; . . . (c) matters testamentary and of administration;" and "(d) minor's business. . . . Under these provisions a court of chancery has the inherent power to sell the estate of a minor for reinvestment in better paying property, where the property of the minor, whether held in fee or remainder, and whether the minor be in existence or an unborn remainderman, is deteriorating in value, and there is every prospect that the estate of the minor would be wasted on account of insufficiency of income to pay the expense of the upkeep of the property.

2. INFANTS. *Interests of all parties born and unborn should be protected in sale of minor's deteriorating property for reinvestment; duty on selling for reinvestment minor's property held under will to subject property acquired by reinvestment to terms of will.* In such case the court should preserve all the estates and interests of the parties whether born or unborn, and, if the property be held under a will, whose terms do not prohibit alienation during the period which, under our statutes, alienation may be prohibited, the court should protect all of the estates created by the will, and in reinvesting the funds the property acquired by reinvestment should be subject to the terms of the will. Before ordering a sale in such case the court should see that the property is in danger of deteriorating to such an extent as to be destructive of the interests of the parties, and should see that the property when sold brings a fair price, and should see that the investments purchased from the funds derived from the sale are of a satisfactory nature and value as an investment.

*Headnote 1. Infants, 31 C. J., sections 102, 105; 2. Infants, 31 C. J., section 122 (1926 Amo.)

APPEAL from chancery court of Lauderdale county.
HON. G. C. TANN, Chancellor.

Suit by Mrs. Cora Meyer Neville, individually and as trustee, and others against Mrs. Evie Meyer Kelly and others. From an order overruling a demurrer to the bill, defendants appeal. Affirmed.

The appellees, Mrs. Cora Meyer Neville, an adult, individually and as trustee for Caroline Neville and George Meyer Neville, and the said Caroline Neville and George Meyer Neville, minors, by their next friend, Mrs. Cora Meyer Neville, residents of Meridian, Lauderdale county, Miss., filed their bill against Mrs. Evie Meyer Kelly, W. A. Meyer, Mrs. Carrie Lee Pratt, H. G. Meyer, Elizabeth Meyer Patterson, David Meyer, Ollie J. Meyer, Evelyn Kelly, William Kelly, Carrie Koebel Kelly, Richard J. Kelly, Gloria Kelly, W. F. Pratt, trustee for H. G. Meyer and Mrs. Elizabeth Meyer Patterson, and Mrs. M. D. Meyer, trustee for David Meyer, stating that Mrs. C. K. Meyer, late of Meridian, Lauderdale county, Miss., died seised and possessed in fee simple of lot 11, block 102, Ragsdale survey, city of Meridian, Lauderdale county,

Miss., and also of certain property lying and situated in Newton county, Miss., constituting a part of the north side addition to the town of Newton, Miss.

Complainants, appellees here, alleged in their bill that Mrs. C. K. Meyer left a last will and testament which had been duly probated by the executor therein named, and that said will had been duly filed and recorded, a copy of which is attached to the bill and made a part thereof. Complainants further alleged that the estate of Mrs. C. K. Meyer had been fully administered by the executor, and that the executor had been finally discharged; certain references being made to the records of Lauderdale county, Miss., pertaining to said administration which are made part of the bill. It is further alleged that S. Eastland, named as trustee in said last will and testament of complainants Caroline Neville and George Meyer Neville and of the defendants H. G. Meyer, David Meyer, and Elizabeth Meyer Patterson has resigned as such trustee, and that the chancery court has heretofore appointed as trustee of said parties to succeed the said S. Eastland the following parties, to-wit: As trustee for complainants Caroline Neville and George Meyer Neville, Mrs. Cora Meyer Neville, their mother; and as trustee for H. G. Meyer and Elizabeth Meyer Patterson, W. F. Pratt; and as trustee for David Meyer, Mrs. M. D. Meyer; and that said Mrs. Cora Meyer Neville, W. F. Pratt, and Mrs. M. D. Meyer had qualified as such trustees by executing bonds as required by the decree of the chancery court, which said bonds have all been approved by the clerk of the chancery court, and that all said trustees are now administering their trusts in the chancery court of said county.

Complainants further alleged that under the last will and testament and the codicil thereto of the said Mrs. C. K. Meyer, and under the final decree of the chancery court approving the final account of the said S. Eastland, executor, the said Caroline Neville and George Meyer

Neville are each the owner for life of an undivided one-eighth interest in and to the said described lands, and that the remainder, after the death of the said Caroline Neville and George Meyer Neville, to the heirs of the body of each of them respectively; and, in the event that either shall die without leaving heirs of their bodies, then the remainder to the survivor; and, in the event the survivor shall die without leaving heirs of the body, then the remainder to the children of the testatrix other than Mrs. Cora Meyer Neville.

Complainants further alleged that, under the last will and testament and the codicil thereto of the said Mrs. C. K. Meyer, defendant Mrs. Evie Meyer Kelly is the owner for life of an undivided one-fourth interest in and to said property, with the remainder to her children Evelyn, William, Carrie Koebel, Richard James, and Gloria Kelly, defendants herein. They further alleged that Mrs. Evie Meyer Kelly now has the following children, all of whom are minors, and all of whom reside with her in Meridian, Miss., naming the above children last mentioned above.

Complainants further allege that, under said last will and testament, as well as the decree of the chancellor, Ollie J. Meyer is the owner for life of an undivided one-eighth interest in and to said property, with the remainder in fee to his son David Meyer, in the event the said David Meyer survives the said Ollie J. Meyer; and in the event the said David Meyer dies before the said Ollie J. Meyer, then the remainder in fee to the other children of the testatrix in equal parts.

Complainants further allege, under the said will and decree, the defendant David Meyer is the owner in fee of an undivided one-eighth interest in and to said property, and that defendants Mrs. Carrie Lee Pratt and Mrs. Elizabeth Meyer Patterson are each the owners in fee of an undivided one-twelfth interest in and to said property, with the remainder in fee to the defendants Mrs. Carrie Lee Pratt and Mrs. Elizabeth Meyer Patterson.

Complainants further allege that the interest in said property of the complainants Caroline Neville and George Meyer Neville and of the defendants David Meyer, Elizabeth Meyer Patterson, and Henry G. Meyer is held in trust under provisions of said will.

Complainants further allege that there is located on the property described as lot 11, block 102, Ragsdale survey, in the city of Meridian, Lauderdale county, Miss., a two-story brick building of the value of about fifteen thousand dollars, and that the rent and income from said building is insufficient to keep said building in repair and to pay the taxes and insurance thereon; and that, inasmuch as there are so many parties interested in said property, and the said owners being widely scattered, it will be impossible to keep said property in good condition so that the income will exceed the cost of repairs, taxes, and insurance.

Complainants further allege that the property described, situated in the town of Newton, Newton county, Miss., is unimproved property and does not bring in any income; that under the present condition of the title to said property it is impossible for said property to be improved and made to bring in any income.

Complainants further allege that all of said property is not worth anything to the complainants and defendants as an investment; that the building located on block 102, lot 11, Ragsdale survey, in the city of Meridian, is deteriorating in value, and that it would be to the best interest of all the parties to this suit to have said property sold and the proceeds invested in more profitable property. It is further alleged that a division of said lands among the owners thereof cannot be made; that a sale of said lands will promote the interest of all parties concerned.

Complainants further allege that Elizabeth Meyer, mentioned in said will, is now married, and is now Mrs. Elizabeth Meyer Patterson; that she is a nonresident of the state of Mississippi, and resides in Mobile, Ala., her

address being given; that the defendant H. G. Meyer is a nonresident of the state of Mississippi, and resides in Chattanooga, Tenn., his address being given; that the defendants Evelyn Kelly, William Kelly, Carrie Koebel Kelly, Richard James Kelly, and Gloria Kelly are minors, and reside with their mother and codefendant, Mrs. Evie Meyer Kelly, in the city of Meridian, Miss.; and that none of said minors has a legal guardian. Complainants further aver that said Mrs. Elizabeth Meyer Patterson is a minor, who will be twenty-one years of age on October 28, 1923, and has no father, mother, or guardian in the state of Mississippi; that the said David Meyer is a minor and has no guardian and resides with his father, Ollie J. Meyer, in Ocean Springs, Miss.; that the defendant W. A. Meyer is a nonresident of the state of Mississippi, and resides in Chattanooga, Tenn., and his address is stated in the bill; that the defendants Mrs. Carrie Lee Pratt and W. F. Pratt both reside in Gulfport, Miss.; that the defendant Mrs. M. D. Meyer, trustee, resides in Ocean Springs, Jackson county, Miss.

The bill prays that said parties be made defendants; that publication be made, summons issued, etc., to the defendants, requiring that they answer the bill, answer under oath being waived; and that on final hearing the court will construe the said will and the codicil thereto, and determine the respective interests of the complainants and defendants, and divest out of the complainants and defendants and all of the unborn children of complainants and defendants hereto who may, under said last will and testament, be entitled to reversionary interests therein, and vest the same in a commissioner, and authorize and direct said commissioner to sell all of said property free from any and all interests or claims whatever of the complainants and defendants and of said unborn children, and will direct the distribution of the proceeds of said sale among the complainants and defendants herein according to their respective interests in said property.

Or, if mistaken in this, the court will by decree direct the commissioner to invest the proceeds of sale in productive real or personal property; the title to be taken and held under the same conditions as said property is now held. And, if mistaken in this, that the court will appoint guardians for the minor complainants and defendants, and that said guardians be authorized and directed, together with the adult complainant and defendants, to sell said land and invest the proceeds thereof in productive real or personal property; the title of which to be taken and held under the said conditions and provisions of said last will and testament and codicil thereto. And, if mistaken in this, for general relief.

The will, omitting the formal parts, reads as follows:

"Item Two. I devise and bequeath to my daughter, Mrs. Evie Kelley, all of my household furniture, silverware, jewelry, and wearing apparel, and the sum of five thousand dollars ($5,000) in money, which she is to have over and above what I hereinafter devise and bequeath to my other children and grandchildren.

"Item Three. After the payment of my just debts, and the payment of the foregoing legacy in item two above to my daughter Evie, I devise and bequeath all of the rest of my property, real and personal, as follows:

"A one-fifth (1/5) part to my daughter Evie; a one-fifteenth (1/15) part to my daughter, Cora Neville, and one-fifteenth (1/15) part each to her two children, Carolyn Neville and George Meyer Neville, now in existence, if at the time of my death, she should have no other children, or if other children should be born to her, the said Mrs. Cora Neville, either at the time of my death, or after then, the said two children of the said Cora, and other or others, that may be born to her shall have equal parts of the two-fifteenths (2/15) above mentioned that would go otherwise to her said children above named. In other words, it is my will that one-fifteenth of my estate, after items one and two, shall go to my daughter Cora, and

one-fifteenth each to her said two children above mentioned.

" Should either of the said children of my daughter Cora Neville die without issue, or without leaving husband or wife, then that child's part as devised and bequeathed herein shall' go to that child, if my daughter Cora shall be living at the time, or if there be more than one surviving, then in that event, in equal parts of these surviving.

"The part above given by me to my child Cora Neville, shall be for her natural life, and at her death the part so given to her, I hereby devise and bequeath in equal parts to her children that survive her death.

"Item Four. I hereby devise and bequeath to my son, Ollie J. Meyer, for his natural life a one-tenth (1/10) part of my estate left above the payment of my just debts, and after the legacy set out in item two hereof, and after his death the part as given to my son Ollie is to go to his son David, if his son David shall' survive him; but if my son Ollie should outlive his son David, then at the death of the said Ollie J. Meyer, the part so devised to him herein shall then be distributed at his death in equal parts to my other children.

"Also, I devise and bequeath unto my grandson David Meyer, the son of Ollie J. Meyer, a one-tenth (1/10) part of my estate, after allowing for items one and two herein.

"Item Five. I hereby devise and bequeath unto my son, W. A. Meyer, a one-fifth (1/5) part of my estate, after allowing for items two and one (2 & 1) herein.

"Item Six. I hereby devise and bequeath unto Mrs. C. Pratt and Elizabeth Meyer, the daughters of my son H. G. Meyer, each a one-fifteenth part of my estate after allowing for items one and two herein.

"Item Seven. I hereby devise and bequeath unto Seabe Eastland, as trustee for H. G. Meyer, a one-fifteenth part of my estate after deducting three thousand dollars, and after allowing for items one and two herein. The

said trustee is to invest the said amount with good and safe collateral, the income of the same and such part of the principal as may be necessary, if necessary, to be used in the support of my said son, Henry G. Meyer during his natural life; said income to be paid by said trustee to the said H. G. Meyer quarterly. This shall be regarded as an active trust. Also said trustee may appoint a successor for himself. After the death of H. G. Meyer, it is my will that the property hereby devised and bequeathed to Seabe Eastland as trustee for H. G. Meyer shall go to his two children, Mrs. Pratt and Elizabeth Meyer. The three thousand dollars above mentioned was deducted because of advances heretofore made to the said H. G. Meyer. Also one thousand dollars is to be deducted from the above amount set out and devised and bequeathed to Ollie J. Meyer, because of advances heretofore made to him.

"Item Eight. In the division of my estate among my children and grandchildren, it is my will that all of my stock in the G. W. Meyer Jewelry Company of Chattanooga, Tennessee, shall go to my son W. A. Meyer. If the value of said stock shall exceed his share of my estate, then he shall pay the difference to my remaining children, and if the value of said stock shall be less than his share in my estate, then the difference shall be made up out of my other property.

"Item Nine. I hereby devise and bequeath all the rest of my property, not already devised and bequeathed, share and share alike to my children, Ollie J. Meyer, Henry G. Meyer, W. A. Meyer, Mrs. Cora Neville, and Mrs. Evie Kelly.

"Item Tenth. It is my will that a trustee be appointed to hold in trust the respective parts or interests hereby devised and bequeathed to the children of Mrs. Cora Neville, Caroline Neville and George Neville, to David Meyer, the son of Ollie J. Meyer, to Elizabeth Meyer, the daughter of H. G. Meyer, the said trustee to invest the

respective interests in good and safe collateral, and to use the income thereof, for their respective support, education and maintenance until they shall become of age, at which time the said trustee shall deliver to them their said property hereby and herein bequeathed and devised to them by me. Also it is my will that the part of my estate hereby bequeathed to my daughter Cora Neville shall be for her natural life and at her death it shall go to her children.

"Item Eleven. The devise and bequest hereinbefore made to my daughter Evie Kelly in items two and three herein, shall be for her natural life and at her death shall go to the children of said Evie Kelly.

"Item Twelve. It is my will that any one contesting this my last will and testament, shall thereby forfeit any and all devises and bequests made to him or her, and that the property devised to him or her contesting this will shall be divided among those of the other devises that acquiesce in the deposition that I have hereinbefore made of my estate.

"Item Thirteen. I hereby appoint Scabe Eastland as executor of this my last will and testament, who shall also be trustee in all cases above provided for in this my last will and testament, he to execute bond for the faithful performance of the duties as such trustee and executor, according to law.

"Witness my signature this the 3rd day of April, A. D. 1915.

"[Signed]　　　　　　　　Mrs. C. K. Meyer."

Codicil:

"I, Mrs. C. K. Meyer, being over the age of twentyone years and being of sound and disposing mind and memory, do hereby make and execute this codicil whereby item three (3) of my last will and testament executed April 3rd, 1915, to which this codicil is attached, shall read as follows, to-wit:

"After the payment of just debts, and the payment of

the foregoing legacy in item two (2) above to my daughter Evie, I devise and bequeath all the rest of my property, real and personal and otherwise, as follows:

"To my daughter Evie I hereby give and bequeath a one-fifth part of estate.

"To my daughter Cora Neville I give and bequeath fifty dollars and no more for the reason that she, my said daughter Cora, through her husband, has already received considerable property and money from my estate, and for the further reason that her said husband is amply able to take care of the needs of my said daughter Cora Neville during her lifetime; and for the further reason that I wish to provide suitably for the two children of my said daughter Cora as set out hereinafter.

"To Carolyn Neville and George Neville, the two children of my daughter Cora Neville I give and bequeath to each a one-tenth (1/10) part of my estate to them for their natural lives, and if either one of said children should die before the other of said children and leave no bodily heirs, then such interest of the one so dying shall go to that of the said Cora Neville that may be left as the survivor of the one so dying. If both should die without bodily heirs, at the death of the one dying last that part of my estate as bequeathed to them shall be equally divided among my children other than Mrs. Cora Neville.

"Witness my signature this the 9th day of September A. D. 1915.

"[Signed]                    MRS. CARRIE K. MEYER."

The administrative proceedings are made exhibits to the bill.

The bill was demurred to on the following grounds:

"(1)  Because it appears from said bill that some of the owners of the land sought to be sold are minors, and said bill does not comply with the requirements of section 2422 of the Code of 1906.

"(2)  Because it appears from the allegations of said bill that some of the minors interested in said lands do

not reside in Lauderdale county, Miss. Therefore this court has no power under the law to appoint guardians for said minors.

"(3)   Because it appears from the allegations of said bill that one of the defendants, David Meyer, who is over seventeen years of age, is a minor and resides in Jackson county, Miss. Therefore, this court has no power to appoint a guardian for the said David Meyer.

"(4)   Because under the statutes of Mississippi the property of minors can be sold only on petition of the guardian of such minors.

"(5)   Because it appears from said bill and exhibits that parties not *in esse* may ultimately acquire an interest in said property under the will of Mrs. C. K. Meyer and this court is without the power to order the sale of said property so as to affect the interests of such persons.

"(6)   Because this court has not the power to divest the title to said property out of all the parties interested therein, and to vest the same in a special commissioner, with authority to sell the same.

"(7)   Because it appears from the allegations of said bill that some of the parties have an estate in possession of said lands and others in reversion or remainder.

"(8)   Because said bill is without equity.

"(9)   And for other grounds to the stated orally, on the hearing hereof.

"(10)   There is no way to estimate the value of the interest of the life tenants in said estate, and no way to estimate the value of the remainder estate, and prohibits partition or sale under the prayer of the bill of complaint."

The demurrer was overruled and appeal granted to this court to settle the principles of the case.

*W. C. Sams,* for appellants.

It is to be observed at the outset that the rights of minors are involved; that the property in question by the

terms of said will was carved into life estates, estates in remainder and undivided interest in fee simple.  If the chancery court is authorized by law to direct the sale of said property, the authority is to be found, if at all, either in section 3521, Code of 1906, or in section 2422, Code of 1906.

I submit that no such authority is granted to the court in a case where the facts are like those in this case, to direct by its decree, a sale of lands, either by section 3521 which has to do with the partition of the property, or by section 2422, Code of 1906.

I.  Section 3521, Code of 1906, provides that the "partition of land held by joint tenants, tenants in common, or co-parceners, having an estate in possession, or right of possession and not in reversion or remainder—may be made by decree of the chancery court of that county in which the lands or some part thereof, are situated . . . ."

Also, section 3524, Code of 1906, authorizes that "if upon hearing the court be of the opinion that a sale of the lands, or any part thereof, will better promote the interest of all parties interested that a partition in kind, or if the court be satisfied that an equal division cannot be made, it shall order a sale of the proceeds among the co-tenants according to their respective interests, etc."

In any event and in either event, the authority of the chancery court to authorize a sale of lands in question must be statutory.  If there is no statute to authorize a sale, then the chancery court was, and is without authority to entertain the bill—*Vick et al.* v. *Vicksburg,* 1 Howard, 444 and 445; *Belew* v. *Jones,* 56 Miss. 344.

Now referring to section 3521, Code of 1906, a partition of land or a sale for partition, can be had only when the land is held by joint tenant, tenant in common, or co-parceners having an estate in possession or right of possession and not in reversion or in remainder.  The bill

itself clearly shows by its allegations that many of the
interested parties have reversionary and remainder in-
terests in the land, a sale of which is asked. This is true
of David Meyer, the minor son of Ollie J. Meyer. By the
terms of the will he owns a remainder estate in an un-
divided one-eighth interest of the lands in question of
which his father, Ollie J. Meyer, owns a life estate, David
Meyer also owns a fee simple, an undivided one-eighth
interest in and to said lands. Also the minor children of
Mrs. Cora Meyer Neville, to-wit: Caroline Neville and
George Neville, each owns a life estate of an undivided
one-eighth interest in and to the said property with con-
tingent remainder to the survivor upon certain contin-
gencies. In other words, some of the devisees own a fee
simple undivided interest in the said property and are in
possession of the same or have the right of possession.
Others are not in possession and have no right to the
present possession, and are the owners of estate in re-
mainder. This is true of David Meyer, and the minor
children of Mrs. Evie Meyer Kelly, also it is true of the
survivor of the minor children of Mrs. Cora Meyer Nev-
ille, if one of them should die. Also, it is true of all
the children of the testatrix with reference to that part
of the division to Caroline Neville and George Neville in
the event that both of them should die without bodily
heirs. Therefore, if we had no other authority than this
statute, section 3521, Code of 1906, it is manifest that the
chancery court has no authority to sell the property in
question as prayed for in the bill of complaint, for the
purpose of partition. But there are many Mississippi
decisions of the supreme court supporting this view, see:
*Pankey* v. *Howard,* 47 Miss. 83; *Belew* v. *Jones,* 56 Miss.
345; *Fox* v. *Coon,* 64 Miss. 467 and 468; *Cooper* v. *Fox,*
67 Miss. 242; *Wood* v. *Bryan,* 68 Miss. 202; *Lawson* v.
*Bonner,* 88 Miss. 256.

In practically all of these cases the court has held that
in order that there be authority for the chancery court to

direct the sale of lands owned by various persons that there must be unity of title and possession; that a person holding a dower interest or life estate or an estate in remainder is not a proper party, but an improper party, and that a sale of their respective interests could not lawfully be made; and that the courts had no authority to order a sale of such interest where there was no unity of title and possession; that an estate for life, or dower interest could not be flung into the hotchpot with the remainder interest and a sale of the property in its entirety be made.

II.  Section 2422, Code of 1906, is the statutory authority that would authorize the chancery court to sell the lands of the minors but implies the necessity of a guardian for said minors.  Before a chancery court could authorize the sale of the minors' interest in land, there would have to be a partition presented to the court for the purpose, by the guardian, setting forth the reasons why a sale of the land would be beneficial to the ward and a summons shall issue for at least three of the near relations of the minors, if there be so many in the state.

In the case at bar, no guardian has been appointed for David Meyer, a minor, one of the appellants.  He has no guardian appointed by the chancery court of Jackson, Mississippi, where he resides, or elsewhere, only a guardian *ad litem* appointed in this cause by the chancery court of Lauderdale county, Mississippi, without notice to him and without his knowledge, or that of his parents. The petition for the sale of the land in question is not by a guardian of any of the minors, no summons has issued to any near relation of David Meyer, a minor in his behalf.  At the late term of the chancery court, after the filing of said bill and upon the motion of the complainants a guardian *ad litem* was appointed by the court for said minor who was then and there living with his father, Ollie J. Meyer, in Jackson county, Mississippi.  Also, if

in fact service was had on said minor, as one of the defendants, it was at a time too late to require his appearance, if at all, at the November term of said chancery court.

Can it be said, that a court, the chancery court, which should jealously guard and protect the rights of minors, would have a right under the law to direct, by its decree, a sale of the lands in which said minor owned an interest therein, regardless of whether said interest was a remainder, or whether said interest was in fee simple, under the facts disclosed by the bill of complaint? Certainly there is no legal authority to warrant the lower court to authorize a sale of said minor's interest in the lands above described, and also described in the bill of complaint, in view of the allegations of said bill of complaint.

This procedure was not followed; therefore the chancellor would have had no authority to enter a decree directing a sale of said land if the defendant had failed to answer to said bill. Therefore the demurrer of David Meyer, a minor, by W. C. Sams, guardian *ad litem,* should have been sustained by the chancellor.

Also, while the bill of complaint alleges as a reason for the various items in the prayer of the bill that the property in question, was non-productive and deteriorating in value and because said property was not producing any income, and also because of the impossibility to keep said property in good condition so that the income would exceed the costs of repairs and taxes, and insurance, yet conceding this to be true, these reasons are not sufficient to cause the court of chancery or equity court to authorize a sale of the land of the minor when the proceedings have not been in the form required by the statutes.

Attention is also called to the fact that nowhere in the bill of complaint do the complainants state to the court whether or not they have found or know of a purchaser who is willing to pay such a price as would compare favorably with the value of said property; nowhere in

the bill of complaint is it shown that the proceeds of the sale of said property could be invested to the superior advantage of the minors who own an interest in said property.   Neither does it show in what other kind of property the proceeds of said sale could be invested so as to be for the superior advantage of said minors. Therefore, the demurrer to the bill of complaint should have been sustained and the bill dismissed.

To recapitulate, the bill of complaint cannot be supported by the law found in chapter 103 of Code of 1906, on partition of property, sections 3521 and 3524 thereof. Neither can the bill be supported or sustained by section 2422, Code of 1906, section 1983, Hemingway's Code, and cases cited thereunder.   See *Theobold* v. *Deslonde,* 93 Miss. 208.

The case of *Crawford* v. *Solomon,* 95 So. 687, upon which appellees, no doubt, rely, is no authority for the court to rely upon in ordering the sale of the lands described in the bill of complaint in this cause, in which many minors are interested as owners of various kinds of estates, as well as fee simple estates.

*Thos. L. Bailey,* also, for appellants.

The relief sought is undoubtedly a request to "stretch the blanket" to the tearing point.   Appellee prays that the "interests" of those having life estates be fixed; that those having "interests" in remainder be fixed; while those *in esse* are remembered in the prayer for the fixing of "interests."   When this prayer has been answered, then, that the court "will direct the distribution of the proceeds of said sale omong the complainants and defendants herein according to their respective interests in said property."

And if mistaken in this prayer, then appellee prays for the sale of said property and that the proceeds be "held under the same conditions as the property is now

held." In other words, minors who have an admitted interest in the property must submit to having their interests sold in order that appellee may prevail, if the contention of appellee is to be sustained.

The effect of granting the relief sought by appellee is merely a partition which does not partite. There can be no question in the light of the decisions of our courts and the rules prescribed by our statutes but that the rights of minors cannot thus be disposed of. Appellee contends that section 159 of our state constitution confers the jurisdiction on the chancery court to grant the relief prayed for in the case at bar. However, it is respectfully submitted that the rules prescribed in sections 2422 and 3521, Code of 1906, must govern in the case of the disposition of minor's property. In *Louisville, N. O. & T. Ry. Co.* v. *Blythe et al.,* 11 So. 111, 69 Miss. 939, this court dealt with respect to "full jurisdiction" rights of the chancery court.

Under the law for the sale of land for the interest of the ward (Sec. 2422, Code of 1906), the manner and method of sale is prescribed. No petition has been filed by the guardian of the minor children for the sale of the property involved in this controversy. In a recent case the court has expressed itself with respect to the rights of minors. *Wilson et al.* v. *McCorkle,* 99 So. 366.

It is respectfully submitted and urged that to grant the prayer of the bill of appellee would ignore the rights of the minor heirs' interest in this property.

*Neville & Stone,* for appellees.

The bill in this case was drawn with the opinion of this court in *Crawford* v. *Solomon,* 131 Miss. 792, 95 So. 686, in mind. It is very true that relief was denied in the Crawford case, because of a provision of the will which prohibited a sale of the land involved in that case during the life of the widow; but it is also true that question of

the power of the chancery court to order the sale of property belonging to a minor for purposes of re-investment, even where such interest is a remainder, was fully presented to this court in the Crawford case, and was very carefully considered by this court. See also: *Florida Central R. R.* v. *Schutte,* 103 U. S. 118, 26 Law Ed. 327.

So, we submit, that the opinion of this court in the Crawford case, in regard to the power of the chancery court to order a sale of lands of infants held in remainder, is decisive of all the questions involved in the case at bar. We admit, of course, that the chancery court does not get the authority to order a sale in the case at bar under chapter 103 of the Code of 1906. This is not a partition suit, therefore the case of *Lawson* v. *Bonner,* 88 Miss. 235, and other similar cases, cited by Mr. Sams, are not pertinent here. Nor was the case at bar brought under section 2422, Code of 1906 (Sec. 1983, Hem. Code) ; yet there are three near relatives of each minor complainant and defendant, parties to this suit.

Our understanding of the opinion of this court in the case of *Crawford* v. *Solomon, supra,* is that section 159 of the state constitution confers the jurisdiction on the chancery court to grant the relief prayed for in the case at bar. On the question of the inherent power of the chancery court under our constitution to order the sale of lands belonging to minors, see 31 C. J., page 1039, sec. 102; *Day* v. *Devitt,* 79 N. J. Eq. 342, 81 Atl. 368, 28 C. J. 1169, sec. 288.

The only interest the Kelly minors have in the property in controversy is a reversionary interest in the one-fourth interest devised to their mother, Mrs. Evie Meyer Kelly for life.

The guardian *ad litem* for David Meyer contends, as we understand him, that the only legal way the reversionary interest of David Meyer and the Kelly children can be disposed of is by a petition by their guardians, under section 2422, Code of 1906. In other words, that

separate petitions must be filed by the guardians, and separate sales made of the reversionary interest of the minors. If this contention be correct, then of course, it would be impossible to sell to an advantage, the reversionary interest of the minors, for no one would pay anything for such an interest in property. Manifestly it is to the interest of all parties concerned, that the entire interest in the property be sold at one sale, and the proceeds invested in more remunerative property. A sale of this kind will certainly be more advantageous to those owning a reversionary interest. Our contention is, the entire title to the property in controversy should be vested in a special commissioner who should be directed to sell the property at public sale. If the chancery court should confirm the sale, then a decree should be rendered directing the special commissioner to invest one-eighth of the proceeds of the sale in property, the title to which should be vested in Ollie J. Meyer for life, with remainder to David Meyer, and one-eighth of the proceeds should be invested in property in the name of David Meyer or in the trustee of David Meyer, and one-fourth of the proceeds of the sale should be invested in property in the name of Mrs. Evie Meyer Kelly for life with the remainder at her death to her children, etc. 43 Am. State Rep. 380, and note.

It is no answer to our contention, with reference to the power of the chancery court to decree a sale of the lands in controversy, to say that this power may be abused to the detriment of the minors—that is, the property may not be sold for its value or that the proceeds may be "squandered." This court will, of course, not assume that the chancery court will abuse its power. We concede that the authority to sell the reversionary interest of minors should be cautiously exercised, and we take it for granted that the learned chancellor in the court below will see to it that the interests of the minors in the property in controversy are fully protected and safeguarded.

It must be apparent to the court that if the title to the property in controversy remains as it is now, the property will continue to deteriorate in value, because no life tenant will contribute to the permanent improvement of the property.

ETHRIDGE, J., delivered the opinion of the court.

(After stating the facts as above).  It is earnestly insisted by the appellant that the court was without jurisdiction to grant the relief prayed and that the chancery court has no authority to sell property held under remainder or reversion and, especially, where possible remaindermen are yet unborn.

There is division of authorities among the different states of the Union as to whether the courts of equity have inherent jurisdiction to entertain suits of this kind.

We dealt with a case presenting many of the aspects of the present case in the case of *Crawford* v. *Solomon,* 131 Miss. 792, 95 So. 686.  In that case we said:

"Section 159 of the State Constitution confers full jurisdiction on the chancery court of minor's business, and we see no reason why the chancery court would not have jurisdiction in a proper case to order the sale of property of minors held in remainder"—citing 14 R. C. L. p. 270, section 43; *Goodman* v. *Winter,* 64 Ala. 410, 38 Am. Rep. 13; *McCreary* v. *Billing,* 176 Ala. 314, 58 So. 311, Ann. Cas. 1915A, 561; section 2419, Code of 1906 (Hemingway's Code, section 1980).

But in that case we held that relief could not be granted because the will there involved expressly prohibited real estate from being sold during the life of the life tenant, the wife of the testator.  The reasoning of the authorities cited in this opinion upon that proposition is very strong and convincing.

In a case note to *Heady* v. *Crouse,* 203 Mo. 100, 100 S. W. 1052, 120 Am. St. Rep. 643 the editor of the Am. St. Rep. series, at page 656 et seq. of that report, says:

"As stated in the beginning of this note, the weight of authority in the United States is to the effect that courts of chancery have inherent power to decree a sale of an infant's real estate. This rule is firmly fixed in Alabama. *Goodman* v. *Winter,* 64 Ala. 410, 38 Am. Rep. 13; *Thorington* v. *Thorington,* 82 Ala. 489, 1 So. 716; *Gassenheimer* v. *Gassenheimer,* 108 Ala. 651, 18 So. 520. In *Goodman* v. *Winter,* 64 Ala. 410, 38 Am. Rep. 13, the court said: 'Whatever may be the doctrine prevailing in the court of chancery in England, or whatever contrariety of opinion or doubt may prevail in the different states as to the jurisdiction of a court of equity to decree a sale of the real estate of an infant, in this state the jurisdiction must be regarded as existing. The jurisdiction does not spring from, nor is it dependent upon, the character of the estate, whether absolute or contingent; whether in possession, or the possession postponed until the happening of a future event. It rests upon the power and duty of the court to protect infants, to take care of and preserve their estates while under disability debarring them from the administration of property.'

"Equity has original jurisdiction to order an infant's land sold for the purpose of otherwise investing the proceeds, if the lands are deteriorating in value and will continue to deteriorate, or if they do not yield income sufficient to keep down burdens to which they are subject, or if the income is greatly disporportionate to their market value. *Gassenheimer* v. *Gassenheimer,* 108 Ala. 651, 18 So. 520.

"In Arkansas, independently of statute, the general jurisdiction over the persons and property of minors belongs to the chancery courts, and no other court has authority to order the sale of the land of a minor, nor to direct an investment of his funds in land. *Myrick* v. *Jacks,* 33 Ark. 425. The jurisdiction of equity over the estates of wards in chancery is broad, comprehensive, and plenary in Georgia, and, in the absence of any legis-

lative provision to the contrary, its courts of equity have inherent jurisdiction to order a sale of the legal estates of minors for reinvestment whenever for the minor's interests. *Dampier* v. *McCall,* 78 Ga. 607, 3 S. E. 563; *Richards* v. *East Tennessee, etc., Ry. Co.,* 106 Ga. 614, 33 S. E. 193, 45 L. R. A. 712; *Reed* v. *Alabama & G. Iron Co.,* 107 Fed. 586, a Georgia case in the United States Circuit Court, where the above rule is stated and affirmed.

"In Illinois, courts of equity have full jurisdiction, independently of statutory provision, to order the sale of the lands of an infant. In *Smith* v. *Sackett,* 10 Ill. 534, it was early announced that the jurisdiction of a court of equity to order the sale of the lands of an infant whenever his interest requires it, is indisputable, and it has also been maintained that the powers of courts of chancery, by virtue of their general jurisdiction, over the estates of infants, to authorize the conversion of their real estate into personalty when it is clearly for their interests, is not only supported by the current of authority in this country, but is so well settled in this state as to be no longer an open question. *Hale* v. *Hale,* 146 Ill. 227, 33 N. E. 858, 20 L. R. A. 247. A court of equity, by virtue of its general jurisdiction, and independently of statute, has power to authorize the conversion of a minor's property from real to personal, or personal to real, when such conversion is clearly to their interest. *Gorman* v. *Mullins,* 172 Ill. 349, 50 N. E. 222; *King* v. *King,* 215 Ill. 100 74 N. E. 89. A court of equity, under its general powers, has jurisdiction over the estates of infants and others under disability, and may, on proper application, order the sale of an infant's unproductive lands to raise means for discharging an encumbrance on productive property in which it has a reversionary interest in fee, though the latter is situate in another state, where the bill seeking such relief shows that such a course is for the best interest of the infant. *Allman* v. *Taylor,* 101 Ill. 185.

"The depreciation in rental value of real estate from

two hundred and fifty dollars per month at the time of the testator's death, to a sum barely sufficient to pay taxes, insurance, and repairs, a corresponding depreciation in market value and probably still further depreciation, before minors, who are to take the fee on coming of age, can attain majority, are sufficient grounds to authorize a court of equity to order the sale of the property for a fair cash value and the investment of the proceeds in interest-bearing securities. *Gorman* v. *Mullins,* 172 Ill. 349, 50 N. E. 222.

"It was decided in an early case in Maryland that a court of chancery, independently of statute, has jurisdiction to authorize the sale of infants' estates and to convert their real estate into money (*Dorsey* v. *Gilber,* 11 Gill & J. 87), and this ruling was followed in *Downin* v. *Sprecher,* 35 Md. 474, and *Roche* v. *Waters,* 72 Md. 264, 19 Atl. 535, 7 L. R. A. 533. And while a court of chancery, prior to the jurisdiction conferred by statute, had power, under some circumstances, to 'sell an infant's lands, where his interests demanded it, it could not decree a sale where an adult had a part interest in the lands. *Roche* v. *Waters,* 72 Md. 264, 19 Atl. 535, 7 L. R. A. 533.

"A statute may, and sometimes does, vest in courts or equity general jurisdiction to dispose of the land as well as the chattels of infants for their benefit, and when this is the case there can be no question of the power of equity to decree the sale of the infant's land. *Williams* v. *Harrington,* 11 Ired. 616, 53 Am. Dec. 421; *Rowland* v. *Thompson,* 73 N. C. 504; *Sutton* v. *Schonwald,* 80 N. C. 198, 41 Am. Rep. 455.

"In South Carolina it is also firmly established that courts of equity have inherent jurisdiction to order the sale of the land of an infant when it is made to appear to be for his benefit. *Clifford's Ex'r* v. *Clifford,* 1 Desaus. 115; *Huger* v. *Huger,* 3 Desaus. 18; *Stapleton* v. *Langstaff,* 3 Desaus. 22; *Bulow* v. *Witte,* 3 S. C. 308. The jurisdiction of chancery to sell and convey an infant's es-

tate, it was decided in *Bulow* v. *Buckner,* Rich. Eq. Cas. 401, is now too firmly established to be shaken. It ought, however, to be exercised with caution, and the court, before ordering the sale, must be satisfied of its necessity or expediency to the infant's interest.

"A court of equity has power to alienate and sell either vested or contingent estates of infants who are properly made parties before it. *Bofil* v. *Fisher,* 3 Rich. Eq. 1, 55 Am. Dec. 627. And such court has power to alienate the contingent title of unborn remaindermen or the contingent titles of interested persons *in esse,* whose names and residences are unknown, and a sale made under such a decree vests the fee simple title in the purchaser. *Bofil* v. *Fisher,* 3 Rich. Eq. 1, 55 Am. Dec. 627.

"In Tennessee it was first announced that the court was prepared, though not without some difficulty, to assert the inherent jurisdiction of a court of equity to convert the estate of infants, by changing realty into personalty, and personalty into realty. *Case of Brown,* 8 Humph. 200. But such jurisdiction was denied in a later case, and it was held that such power in a court of equity arose solely by virtue of the statute. *Rogers* v. *Clark,* 3 Sneed, 665. In the latest case from that state the court has decided that in estates in which the rights of minors are involved, when a sale becomes necessary, courts of chancery have inherent jurisdiction and discretion to sell either the realty or personalty, as appears best for those concerned. *Jones* v. *Sharp,* 9 Heisk. 660.''

In the case of *Bofil* v. *Fisher,* 3 Rich. Eq. (S. C.) 1, 55 Am. Dec. 627, the South Carolina court in a remarkably strong opinion held that a court of equity has power to sell either vested or contingent estates of infants who are properly made parties before it, and has power to alienate the contingent title of unborn remaindermen or the contingent titles of interested persons *in esse,* whose names and residences are unknown and that a sale made under such a decree vests a fee-simple title in the pur-

chaser. After setting out the facts in the will involved in that case, the court said (3 Rich. Eq. 5, 55 Am. Dec. 630, 631):

"If, under the circumstances of this case, an order for sale in chancery should be insufficient to confer a valid title upon the purchaser, I apprehend the title to an inconceivable amount of property in South Carolina would be put in peril. And were there stronger reasons than do actually exist, to doubt the authority of this jurisdiction in the particular mentioned, the court would hesitate long before it would announce a judgment which would shake, perhaps, one-fourth of the titles in the state.

"The difficulty, if any exists, does not lie in the first branch of the appeal, which relates to the right of the court to sell the contingent interest of Mary J. Bofil, who is an infant child of Paul Bofil, and a party defendant, by guardian *ad litem*, to the bill. The right of the court to sell either the vested or contingent estates of infants, who can be and are properly made parties before it, cannot at this day be questioned. But the question is whether the court has the power, by its decrees, to alienate the contingent titles of unborn remaindermen, who, from the nature of things, cannot be made parties, or be represented in the proceedings before the court; or to alienate the contingent titles of persons who, though *in esse*, are resident in other states, or in foreign lands, whose residences and even whose names are unknown.

"To say that the court could not under circumstances like these convey away the fee would be to assert a doctrine that would render conditional limitations and contingent remainders an intolerable evil to a growing and prosperous community. Thus to shackle estates without the power of relief, unless every person having a contingent and possible interest could be brought before the court, as a party complainant or defendant, according to the usual forms and ordinary practice of the court, would be to sacrifice the rights and interests of the present generation to those of posterity, and of citizens to aliens. If

the whole property of the country were thus situated, it is obvious that all improvement and advance would be completely checked. And this check upon progress and improvement would be in direct proportion to the extent to which this state of things exists. The case before the court is an apt illustration. Here are valuable unimproved lots, in a thriving and prosperous town, which the life tenant cannot with a due regard to his interest improve, and the remaindermen cannot, because their rights are contingent and may never vest. Here also is a suffering family, who may obtain relief by the action of the court. And they are the first objects of the testator's bounty. Is there no power in the state by which the titles of estates may be unfettered from the contingent claims of unborn remaindermen, and their rights not extinguished, but transferred from the property itself to a fund arising from the sale of the property? I think there should be; I think there is.''

We think that the bill is entertainable, and that the chancery court has jurisdiction to preserve the rights and property of all the parties whether born or unborn. The court, however, will preserve the estates of all the parties born or unborn under proper decree, and will direct the proceeds realized from the sale of this property so as to carry out the intention expressed in the will. Of course, the court will see before making a sale, or at least before confirming it, that the property brings a fair price, and will see that the funds procured from the sale are properly invested in other property so as to carry out the provisions of the will for the benefit of all parties interested. It will be the duty of the parties to the suit, especially of the complainant, to satisfy the court as to the value of the property and as to the investments. The court will no doubt appoint a competent and suitable commissioner, and will have the aid of all parties in administering this trust.

The judgment of the court below will be affirmed.

*Affirmed.*