262 So.2d 641 (1972)
Henry M. BAKER et al., Defendants-Appellants,
v.
Anna Plaxico WEEDON, Complainant-Appellee.
No. 46594.
Supreme Court of Mississippi.
April 10, 1972.
Rehearing Denied June 5, 1972.
Smith, Downs, Coleman & Ross, Corinth, for appellant.
Sharp & Fisher, Corinth, for appellee.
PATTERSON, Justice:
This is an appeal from a decree of the Chancery Court of Alcorn County. It directs a sale of land affected by a life estate and future interests with provision for the investment of the proceeds. The interest therefrom is to be paid to the life tenant for her maintenance. We reverse and remand.
John Harrison Weedon was born in High Point, North Carolina. He lived throughout the South and was married twice prior to establishing his final residence in Alcorn County. His first marriage to Lula Edwards resulted in two siblings, *642 Mrs. Florence Weedon Baker and Mrs. Delette Weedon Jones. Mrs. Baker was the mother of three children, Henry Baker, Sarah Baker Lyman and Louise Virginia Baker Heck, the appellants herein. Mrs. Delette Weedon Jones adopted a daughter, Dorothy Jean Jones, who has not been heard from for a number of years and whose whereabouts are presently unknown.
John Weedon was next married to Ella Howell and to this union there was born one child, Rachel. Both Ella and Rachel are now deceased.
Subsequent to these marriages John Weedon bought Oakland Farm in 1905 and engaged himself in its operation. In 1915 John, who was then 55 years of age, married Anna Plaxico, 17 years of age. This marriage, though resulting in no children, was a compatible relationship. John and Anna worked side by side in farming this 152.95-acre tract of land in Alcorn County. There can be no doubt that Anna's contribution to the development and existence of Oakland Farm was significant. The record discloses that during the monetarily difficult years following World War I she hoed, picked cotton and milked an average of fifteen cows per day to protect the farm from financial ruin.
While the relationship of John and Anna was close and amiable, that between John and his daughters of his first marriage was distant and strained. He had no contact with Florence, who was reared by Mr. Weedon's sister in North Carolina, during the seventeen years preceding his death. An even more unfortunate relationship existed between John and his second daughter, Delette Weedon Jones. She is portrayed by the record as being a nomadic person who only contacted her father for money, threatening on several occasions to bring suit against him.
With an obvious intent to exclude his daughters and provide for his wife Anna, John executed his last will and testament in 1925. It provided in part:
Second; I give and bequeath to may beloved wife, Anna Plaxco Weedon all of my property both real, personal and mixed during her natural life and upon her death to her children, if she has any, and in the event she dies without issue then at the death of my wife Anna Plaxco Weedon I give, bequeath and devise all of my property to my grandchildren, each grandchild sharing equally with the other.
Third; In this will I have not provided for my daughters, Mrs. Florence Baker and Mrs. Delett Weedon Jones, the reason is, I have given them their share of my property and they have not looked after and cared for me in the latter part of my life.
Subsequent to John Weedon's death in 1932 and the probate of his will, Anna continued to live on Oakland Farm. In 1933 Anna, who had been urged by John to remarry in the event of his death, wed J.E. Myers. This union lasted some twenty years and produced no offspring which might terminate the contingent remainder vested in Weedon's grandchildren by the will.
There was no contact between Anna and John Weedon's children or grandchildren from 1932 until 1964. Anna ceased to operate the farm in 1955 due to her age and it has been rented since that time. Anna's only income is $1000 annually from the farm rental, $300 per year from sign rental and $50 per month by way of social security payments. Without contradiction Anna's income is presently insufficient and places a severe burden upon her ability to live comfortably in view of her age and the infirmities therefrom.
In 1964 the growth of the city of Corinth was approaching Oakland Farm. A right-of-way through the property was sought by the Mississippi State Highway Department for the construction of U.S. Highway 45 bypass. The highway department located Florence Baker's three children, the contingent remaindermen by *643 the will of John Weedon, to negotiate with them for the purchase of the right-of-way. Dorothy Jean Jones, the adopted daughter of Delette Weedon Jones, was not located and due to the long passage of years, is presumably dead. A decree pro confesso was entered against her.
Until the notice afforded by the highway department the grandchildren were unaware of their possible inheritance. Henry Baker, a native of New Jersey, journeyed to Mississippi to supervise their interests. He appears, as was true of the other grandchildren, to have been totally sympathetic to the conditions surrounding Anna's existence as a life tenant. A settlement of $20,000 was completed for the right-of-way bypass of which Anna received $7500 with which to construct a new home. It is significant that all legal and administrative fees were deducted from the shares of the three grandchildren and not taxed to the life tenant. A contract was executed in 1970 for the sale of soil from the property for $2500. Anna received $1000 of this sum which went toward completion of payments for the home.
There was substantial evidence introduced to indicate the value of the property is appreciating significantly with the nearing completion of U.S. Highway 45 bypass plus the growth of the city of Corinth. While the commercial value of the property is appreciating, it is notable that the rental value for agricultural purposes is not. It is apparent that the land can bring no more for agricultural rental purposes than the $1000 per year now received.
The value of the property for commercial purposes at the time of trial was $168,500. Its estimated value within the ensuing four years is placed at $336,000, reflecting the great influence of the interstate construction upon the land. Mr. Baker, for himself and other remaindermen, appears to have made numerous honest and sincere efforts to sell the property at a favorable price. However, his endeavors have been hindered by the slowness of the construction of the bypass.
Anna, the life tenant and appellee here, is 73 years of age and although now living in a new home, has brought this suit due to her economic distress. She prays that the property, less the house site, be sold by a commissioner and that the proceeds be invested to provide her with an adequate income resulting from interest on the trust investment. She prays also that the sale and investment management be under the direction of the chancery court.
The chancellor granted the relief prayed by Anna under the theory of economic waste. His opinion reflects:
... [T]he change of the economy in this area, the change in farming conditions, the equipment required for farming, and the age of this complainant leaves the real estate where it is to all intents and purposes unproductive when viewed in light of its capacity and that a continuing use under the present conditions would result in economic waste.
The contingent remaindermen by the will, appellants here, were granted an interlocutory appeal to settle the issue of the propriety of the chancellor's decree in divesting the contingency title of the remaindermen by ordering a sale of the property.
The weight of authority reflects a tendency to afford a court of equity the power to order the sale of land in which there are future interests. Simes, Law of Future Interest, section 53 (2d ed. 1966), states:
By the weight of authority, it is held that a court of equity has the power to order a judicial sale of land affected with a future interest and an investment of the proceeds, where this is necessary for the preservation of all interests in the land. When the power is exercised, the proceeds of the sale are held in a judicially created trust. The beneficiaries of the trust are the persons who held interests in the land, and the beneficial interests *644 are of the same character as the legal interests which they formally held in the land.
See also Simes and Smith, The Law of Future Interest, § 1941 (2d ed. 1956).
This Court has long recognized that chancery courts do have jurisdiction to order the sale of land for the prevention of waste. Kelly v. Neville, 136 Miss. 429, 101 So. 565 (1924). In Riley v. Norfleet, 167 Miss. 420, 436-437, 148 So. 777, 781 (1933), Justice Cook, speaking for the Court and citing Kelly, supra, stated:
... The power of a court of equity on a plenary bill, with adversary interest properly represented, to sell contingent remainders in land, under some circumstances, though the contingent remaindermen are not then ascertained or in being, as, for instance, to preserve the estate from complete or partial destruction, is well established.
While Mississippi and most jurisdictions recognize the inherent power of a court of equity to direct a judicial sale of land which is subject to a future interest, nevertheless the scope of this power has not been clearly defined. It is difficult to determine the facts and circumstances which will merit such a sale.
It is apparent that there must be "necessity" before the chancery court can order a judicial sale. It is also beyond cavil that the power should be exercised with caution and only when the need is evident. Lambdin v. Lambdin, 209 Miss. 672, 48 So.2d 341 (1950). These cases, Kelly, Riley and Lambdin, supra, are all illustrative of situations where the freehold estate was deteriorating and the income therefrom was insufficient to pay taxes and maintain the property. In each of these this Court approved a judicial sale to preserve and maintain the estate. The appellants argue, therefore, that since Oakland Farm is not deteriorating and since there is sufficient income from rental to pay taxes, a judicial sale by direction of the court was not proper.
The unusual circumstances of this case persuade us to the contrary. We are of the opinion that deterioration and waste of the property is not the exclusive and ultimate test to be used in determining whether a sale of land affected by future interest is proper, but also that consideration should be given to the question of whether a sale is necessary for the best interest of all the parties, that is, the life tenant and the contingent remaindermen. This "necessary for the best interest of all parties" rule is gleaned from Rogers, Removal of Future Interest Encumbrances  Sale of the Fee Simple Estate, 17 Vanderbilt L.Rev. 1437 (1964); Simes, Law of Future Interest, supra; Simes and Smith, The Law of Future Interest, § 1941 (1956); and appears to have the necessary flexibility to meet the requirements of unusual and unique situations which demand in justice an equitable solution.
Our decision to reverse the chancellor and remand the case for his further consideration is couched in our belief that the best interest of all the parties would not be served by a judicial sale of the entirety of the property at this time. While true that such a sale would provide immediate relief to the life tenant who is worthy of this aid in equity, admitted by the remaindermen, it would nevertheless under the circumstances before us cause great financial loss to the remaindermen.
We therefore reverse and remand this cause to the chancery court, which shall have continuing jurisdiction thereof, for determination upon motion of the life tenant, if she so desires, for relief by way of sale of a part of the burdened land sufficient to provide for her reasonable needs from interest derived from the investment of the proceeds. The sale, however, is to be made only in the event the parties cannot unite to hypothecate the land for sufficient funds for the life tenant's reasonable needs. By affording the options above we *645 do not mean to suggest that other remedies suitable to the parties which will provide economic relief to the aging life tenant are not open to them if approved by the chancellor. It is our opinion, shared by the chancellor and acknowledged by the appellants, that the facts suggest an equitable remedy. However, it is our further opinion that this equity does not warrant the remedy of sale of all of the property since this would unjustly impinge upon the vested rights of the remaindermen.
Reversed and remanded.
RODGERS, P.J., and JONES, INZER, and ROBERTSON, JJ., concur.