733 So.2d 858 (1999)
Donald B. RUSSELL, Appellant,
v.
Becky D. RUSSELL, Appellee.
No. 97-CA-00691 COA.
Court of Appeals of Mississippi.
January 26, 1999.
*859 Jackson M. Brown (Withdrawn), Starkville, Attorney for Appellant.
Carter Dobbs Jr., Amory, Attorney for Appellee.
BEFORE McMILLIN, P.J., COLEMAN, and PAYNE, JJ.
McMILLIN, P.J., for the Court:
¶ 1. Becky Russell was awarded a divorce from Donald Russell on the ground of adultery. In the judgment of divorce, the chancellor addressed multiple matters relating to finances that are a necessary part of the dissolution of a marriage. Donald Russell, convinced that the chancellor manifestly abused his discretion in fashioning the financial relief to be afforded Becky Russell, has appealed that aspect of the case to this Court. We find the determination of the chancellor to be supported by competent evidence and within the range of discretion granted to the chancellor in such matters. We, therefore, affirm the judgment.

I.

Facts
¶ 2. Becky and Donald Russell were married in 1983. At the time, Becky Russell was a licensed nurse earning in the range of $30,000 per year. Donald Russell was an undergraduate student. After the marriage, Donald Russell completed undergraduate school and attended medical school. During this time, Becky Russell continued to be employed and contributed her income toward the support of the family. After graduation from medical school, Dr. Russell established a medical practice in Clay County specializing in radiology. In 1994, the proof indicated that the medical practice produced gross income of $270,449. In the next year, the gross income from Dr. Russell's medical practice increased to $327,546. Testimony at trial indicated that, based on gross income in that range, Dr. Russell would have aftertax disposable income of approximately $13,000 per month.
*860 ¶ 3. Mrs. Russell worked in her husband's medical clinic in a managerial and clerical capacity and was paid an amount consistent with her income range as a nurse. This money was intended for use solely by her for whatever purposes she desired. Dr. Russell was responsible for payment of the normal and customary living expenses of the parties.
¶ 4. A child was born to the couple in 1984.
¶ 5. Mrs. Russell continued her employment relationship with Dr. Russell's clinic after their marital difficulties arose by virtue of an order resolving temporary features pending the trial of the divorce on the merits. However, in the final divorce judgment, the chancellor found that the forced continuation of this employment relationship was not in the best interest of the parties. Thus, as of the date of the divorce, Mrs. Russell became unemployed.
¶ 6. During the course of the marriage, the parties accumulated certain assets. Principal among them was a home valued in the range of $135,000 to $155,000 which was subject to an outstanding mortgage of approximately $90,000 to $95,000 which carried payments of about $1,000 per month. The chancellor concluded that the parties had approximately $40,000 in equity in the home. Mrs. Russell was driving a 1992 Lexus valued at $20,000 which was subject to a loan with a balance approximately the same as the vehicle's value. Several older vehicles were owned free and clear of any liens. Dr. Russell had a retirement account carrying a balance of about $89,000. The parties had also accumulated a ski boat, a bass boat, and a camper. No attempt was made to place a value on Dr. Russell's medical clinic as a going business beyond the proof indicating the gross income derived from his practice except for evidence that the clinic maintained a checking account that normally carried a balance in the range of $100,000. Mrs. Russell was shown to be without significant assets in her own name and she had no accrued retirement benefits of any kind.
¶ 7. Insofar as the record indicates, both parties were in good health. At the time of the divorce, Dr. Russell was thirty-six years of age and Mrs. Russell was forty-four years old.
¶ 8. The chancellor awarded Mrs. Russell custody of the minor daughter and set child support for Dr. Russell at $1,250 per month. Dr. Russell does not directly challenge this award. However, he suggests in the course of his argument that the award must be taken into consideration because of its impact on his capacity to perform those financial obligations due directly to his former wife that were imposed by the chancellor's decision.
¶ 9. The chancellor awarded Mrs. Russell full title to the marital dwelling but made her responsible for future mortgage payments on the property. He ordered Dr. Russell to pay for $5,041.70 in repairs that were shown to be immediately needed on the home. Dr. Russell was additionally ordered to pay Mrs. Russell the sum of $50,000 for what the chancellor called "start-up money." The chancellor awarded Mrs. Russell periodic alimony in the amount of $5,000 per month. Mrs. Russell received title to the Lexus automobile but was charged with paying the remaining indebtedness secured by the vehicle. Mrs. Russell received the ski boat conditioned on her assuming to pay the outstanding debt due for its purchase. Dr. Russell, in turn, received the bass boat. Mrs. Russell was awarded attorney's fees in the amount of $7,500.
¶ 10. In this appeal, Dr. Russell attacks various aspects of the chancellor's decision by raising four issues. First, he claims that there was not sufficient evidence in the record to permit the chancellor to make an informed decision on the equitable division of marital assets, the awards of alimony, and the award of attorney's fees. Second, he urges that the chancellor's various awards to Mrs. Russell were so unduly generous as to show an abuse of discretion. *861 Third, he claims that the chancellor arbitrarily refused to consider new evidence brought forward in a post-judgment motion which he claims materially affected the equity of the financial award. Fourth, he claims the award of attorney's fees was manifestly in error because the chancellor did not base the award on a finding of Mrs. Russell's inability to pay for representation in the case. We will consider the issues in the same order presented by Dr. Russell.

II.

The First Issue: The Lack of Findings in Support of the Chancellor's Decision
¶ 11. The crux of Dr. Russell's argument on this point is that the chancellor arbitrarily decided to make an across-the-board equal division of marital assets without giving proper consideration to those factors that ought properly to be considered in making the division. The chancellor, in his bench opinion, indicated that he was basing his decision primarily on the fact that Mrs. Russell "substantially supported the defendant while he obtained his medical degree...." He also found that Mrs. Russell had fulfilled her other marital obligations in addition to providing substantial economic assistance to the family. While the chancellor did not give an item by item analysis of each of the factors set out in Ferguson v. Ferguson, we find that his analysis does touch on those matters that would appear, in the ordinary case, to be of some primary significance, i.e., economic contribution, contribution to the spouse's education, and contributing to family stability. Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss. 1994). Having found Mrs. Russell to have made significant contributions on all these fronts, the chancellor determined that an equal distribution of assets would be equitable. Dr. Russell points to no particular remaining element of the Ferguson criteria that the chancellor is alleged to have ignored or misapplied. Rather, his countering argument appears to be based primarily on the fact that his own enhanced earning ability was the direct means by which these assets were acquired. We find that argument unpersuasive based on the chancellor's conclusion that Mrs. Russell's efforts early in the marriage contributed significantly to the very existence of Dr. Russell's earning capacity. We find the chancellor's decision to be satisfactorily explained and do not conclude that his decision was outside the realm of discretion necessarily given to chancellors in such matters. See Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993).

III.

The Second Issue: The Award to Mrs. Russell Was Too Generous
¶ 12. Dr. Russell's primary argument on this point is that, when the various financial awards to Mrs. Russell are considered in the aggregate, Mrs. Russell has been treated so over-generously by the chancellor that we must find the chancellor abused his discretion. He cites the case of Gambrell v. Gambrell, which acknowledges that, in the final analysis, the entire package must be considered in its totality since the chancellor is dealing with a finite amount of resources and earning potential and, therefore, where one part of an award increases, some other must recede proportionately if the overall award is not to be unduly burdensome on the paying spouse. Gambrell v. Gambrell, 650 So.2d 517, 521 (Miss.1995). The proof shows that Dr. Russell, based on past experience, can reasonably expect to have $13,000 per month in disposable income. His child support obligation was $1,250 per month, together with approximately $600 in additional expenses for the child he was ordered to pay directly. This had the effect of leaving him with $11,150 in discretionary income each month. Of that amount, the chancellor ordered him to pay $5,000 per month in periodic alimony to Mrs. Russell.
¶ 13. While this amount of periodic alimony is, without question, a generous *862 award, representing as it does almost one-half of Dr. Russell's available monthly income, we conclude that the award was within the range of the chancellor's discretion in such matters. The chancellor specifically noted Mrs. Russell's contribution to Dr. Russell's education and training and concluded that, on those facts, she was "entitled to, not only presently, but in the future to share in [Dr. Russell's] income" that would be produced, in part, because of her prior contributions. The Mississippi Supreme Court has specifically sanctioned such considerations in fashioning an award where one spouse makes a material contribution to the advanced education of the other and then is deprived of any benefit of those efforts by the breakup of the marriage at a time when that earning capacity has the reasonable prospect of continuing for many more years. See, e.g., Monroe v. Monroe, 612 So.2d 353, 358-59 (Miss.1992). We also note that the award still leaves Dr. Russell with a substantial monthly income that can only be expected to increase over time and which will, undoubtedly, increase at such time as the child of the parties is emancipated. We, therefore, decline to interfere with this aspect of the chancellor's decision. We view the $50,000 "start up money" as rehabilitative alimonya form of award sanctioned by the Mississippi Supreme Court in Hubbard v. Hubbard, 656 So.2d 124, 129-30 (Miss.1995). In view of the fact that Mrs. Russell gave up her professional career as a nurse to work directly in support of her husband's medical practice, and, in further view of the fact that the divorce abruptly ended this alternate employment, we find no abuse of discretion in permitting Mrs. Russell to enjoy this temporary financial cushion as she prepares to re-enter her prior profession.

IV.

The Third Issue: The Chancellor's Refusal to Consider Newly Discovered Evidence
¶ 14. Dr. Russell alleges that, when this case was tried in February 1997, he was unaware that his 1996 income had dropped appreciably. According to his allegations, his income in 1996 declined by approximately $2,000 per month. He says that, because of the complex nature of his financial records, his accountant was unable to discover this decline in income until after the trial. He sought post-judgment relief on the basis of this discovery, calling it newly-discovered evidence. The chancellor refused to grant any relief on this basis and Dr. Russell claims this was error.
¶ 15. The matter of granting post-judgment relief based on a claim of newly-discovered evidence is a matter vested in the sound discretion of the trial court. In order to be entitled to such relief, the movant must demonstrate that the evidence was not available at trial and could not have been available through the exercise of reasonable diligence. M.R.C.P. 60(b)(3); Sullivan v. Heal, 571 So.2d 278, 281 (Miss.1990). In this case, Dr. Russell's financial affairs for 1996 had been concluded for over one month prior to trial. Thus, the information was certainly available to him. The fact that his accountant had been unable to compile and finally process the information was a matter known to Dr. Russell prior to commencement of the trial. Had he deemed the availability of this information vital to the proper presentation of his case, it was certainly within his prerogative to seek a continuance until the accountant could have completed his work. Dr. Russell failed to do so and, instead, announced ready for trial. On these facts, we do not think that the accountant's analysis, though it may have been surprising, was something that could not have been discovered through the exercise of reasonable diligence in advance of trial. For that reason, we do not think the chancellor erred in refusing to disturb his decision based on this information.

V.

The Fourth Issue: Attorney's Fees
¶ 16. As his final issue, Dr. Russell suggests that the chancellor erred in *863 awarding attorney's fees to Mrs. Russell in the amount of $7,500. Normally, an award of attorney's fees requires a finding, among other things, that the spouse seeking such fees does not have the resources to pay for representation. Benson v. Benson, 608 So.2d 709, 712 (Miss.1992). However, in this case, the chancellor's award of attorney's fees was not for general representation of Mrs. Russell's interests in the divorce. Rather, the chancellor specifically held that the award was to defray Mrs. Russell's attorney's fees associated with forcing Dr. Russell to comply with discovery requests. He found Dr. Russell's recalcitrance to be "persistent" and further found that his wilful failure caused "numerous unnecessary hearings." Mississippi Rule of Civil Procedure 37(a)(4) provides that "the reasonable expenses incurred in obtaining the order [compelling discovery], including attorney's fees" may be awarded. M.R.C.P. 37(a)(4). We find the chancellor's award of attorney's fees in this instance to fall within the authority granted to him under this rule and not under his general equitable authority to award attorney's fees to a destitute spouse. We note that the chancellor's award of fees was substantially less than the amount requested. No argument is made that the amount was unreasonably high or was for services that were not warranted under the facts. For these reasons, we decline to disturb the chancellor's award of attorney's fees.
¶ 17. THE JUDGMENT OF THE CHANCERY COURT OF CLAY COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES, C.J., THOMAS, P.J., COLEMAN, DIAZ, KING, LEE, PAYNE, and SOUTHWICK, JJ., CONCUR.
IRVING, J., NOT PARTICIPATING.