770 So.2d 978 (2000)
Vincent GARRIGA, Appellant.
v.
Lisa GARRIGA, Appellee.
No. 1999-CA-00098-COA.
Court of Appeals of Mississippi.
May 30, 2000.
Rehearing Denied November 7, 2000.
*980 David P. Oliver, Gulfport, Attorney for Appellant.
Wayne L. Hengen, Biloxi, Attorney for Appellee.
EN BANC.
KING, P.J., for the Court:
¶ 1. This is an appeal from a judgment of divorce entered in the Chancery Court of Jackson County dissolving the marriage of Vincent Garriga and Lisa Garriga. Vincent Garriga has appealed on the following issues, as taken verbatim from his brief: 1.) The court erred in affirming the master's report for the sale of a certain parcel of real property described in the master's report and divesting Vincent Garriga, the appellant herein, of his title.; 2.) The court erred in granting a divorce to Lisa Garriga, the appellee herein, in that she failed to prove by a preponderance of the evidence the grounds of habitual cruel and inhuman treatment.; 3.) The court erred in not granting Vincent Garriga, the appellant, a divorce on the grounds of habitual cruel and inhuman treatment and by not awarding alimony to him.; 4.) The Court erred in granting a ten per cent management fee to Lisa Garriga, the appellee and by ordering the appellant to pay attorneys' fees and costs.; and 5.) The court erred in ordering Vincent Garriga, the appellant, to pay Moore and Powell, a CPA firm, fees in the amount of $4,993.90.
¶ 2. Finding error we reverse in part and affirm in part.

FACTS
¶ 3. On June 2, 1997, Mrs. Garriga filed for divorce on the grounds of adultery and *981 cruel, habitual and inhuman treatment, or alternatively irreconcilable differences. Mr. Garriga countersued citing as grounds for divorce desertion, and habitual, cruel and inhuman treatment, or alternatively, irreconcilable differences.
¶ 4. The Garrigas owned several parcels of rental property in the Biloxi, Mississippi area. When the divorce action was filed, they were experiencing financial difficulties and several of the rental properties were close to foreclosure. As a part of the divorce proceedings, Mrs. Garriga filed a motion for temporary relief, which asked the court to allow the rental property located at 145 Hopkins Blvd. in Biloxi, Mississippi to be sold and the proceeds applied to marital obligations. Mrs. Garriga also asked that Mr. Garriga be compelled to sign income tax refund checks, and that the tax refunds be applied to their outstanding real estate debt to prevent foreclosure. The Garrigas agreed to the appointment of a special master to hear this motion. The Master granted Mrs. Garriga's motion. Mr. Garriga appealed that decision to the Jackson County Chancery Court which affirmed the Master's decision, but directed that proceeds be deposited with the chancery court and disbursed only upon court order.
¶ 5. In April 1995, Mr. Garriga was hospitalized for three weeks for mental illness. Upon release, he resided briefly with his parents prior to returning to the marital home. The Garrigas separated in August 1996. Since this separation, Mr. Garriga has lived with his parents. Mr. Garriga believed that his mental status was such that he was unable to care for himself or handle any business related matters. As a result of his mental illness, Mr. Garriga filed for social security disability benefits. Mr. Garriga was found to be mentally disabled and awarded social security disability benefits.
¶ 6. Because of Mr. Garriga's alleged mental disability, a petition to appoint his parents as his conservators was filed. A hearing on this petition was scheduled for January 12, 1998.
¶ 7. The chancery court, aware of the pending conservatorship hearing, set the sale of the Hopkins Blvd. property for three days after the conservatorship hearing. Mr. Garriga requested that the court reconsider the ordered sale of the Hopkins Blvd. property. The court denied this motion on February 10, 1998, and the 145 Hopkins Blvd. property was sold on February 27, 1998. Prior to the sale, Mr. Garriga voluntarily withdrew the requested appointment of conservators.
¶ 8. After trial in August 1998, the chancellor granted Mrs. Garriga a divorce on the grounds of habitual, cruel and inhuman treatment, along with custody of the minor child. The chancellor provided visitation for Mr. Garriga and ordered the distribution of the personal property as agreed to by Mr. and Mrs. Garriga. The chancellor also ordered the sale of all real property jointly owned by Mr. and Mrs. Garriga with proceeds from the sales to be divided equally between the Garrigas. Motions to amend the judgment of divorce and for reconsideration were filed. A final judgment was entered in December 1998 which overruled all motions. It is from this final judgment that Mr. Garriga appeals.

ANALYSIS AND DISCUSSION OF THE LAW

I.

The Court erred in affirming the Master's Report for the sale of a certain parcel of real property described in the Master's Report and divesting Vincent Garriga, the appellant herein, of his title thereto.
¶ 9. Mr. Garriga argues that a court ordered sale of the real property was error when the purpose of the sale did not relate to alimony, maintenance or child support. At the time of the sale, the parties marital rights and interests in the property were yet to be determined. Mr. Garriga asserts error by the court in ordering *982 a sale prior to determining those rights and interests and thereby possibly affecting the chancellor's ultimate decision with regard to property distribution and alimony.
¶ 10. Mr. Garriga also argues that when the sales contract was entered into on August 21, 1997, he lacked the capacity to contract. He argues that the court erred by not conducting an independent investigation as to his mental state at the time the contract was signed. Mr. Garriga argues that this amounted to manifest error on the part of the chancellor.
¶ 11. This divorce was an ongoing process. Mr. and Mrs. Garriga's marital estate contained a number of rental properties. Those rental properties, facing possible foreclosure, required preservation. Unless these properties were protected, neither party would have an interest in them. The chancery court had the inherent authority to take appropriate steps to preclude waste of the marital estate pending a final resolution of the marital relation and rights of the Garrigas. Baker v. Weedon, 262 So.2d 641, 644 (Miss.1972). The court did not act beyond its inherent authority in ordering the sale of 145 Hopkins Blvd. to protect the bulk of the marital estate.
¶ 12. As a part of this issue, Mr. Garriga alleges that he lacked the mental capacity to contract for the sale of real property, and the chancellor therefore erred in ordering a sale. This Court finds no merit in this allegation. The sale was not ordered pursuant to the contract, but based upon the urgent and necessitous circumstance established by Mrs. Garriga. As noted, the chancellor possessed appropriate equity power to preserve and protect the marital assets. Id. Out of an abundance of caution the chancellor slated the sale for three days after the scheduled conservatorship hearing. The petition to appoint conservators was voluntarily dismissed prior to the sale. This action is reviewed on the familiar abuse of discretion standard. Denson v. George, 642 So.2d 909, 913 (Miss.1994). Having reviewed the information then before the chancellor, this Court cannot say that he abused his discretion.
¶ 13. The Court finds no merit in this issue.

II.

The court erred in granting a divorce to Lisa Garriga, the appellee herein, in that she failed to prove by a preponderance of the evidence the grounds of habitual cruel and inhuman treatment.
¶ 14. Mr. Garriga alleges an insufficiency of evidence to prove Mrs. Garriga's case. He states that the allegations of arguments and harassment, staying out at night and leaving Mrs. Garriga in a parking lot do not amount to cruel, habitual and inhuman treatment. To justify a divorce on the grounds of habitual cruel and inhuman treatment, the conduct must endanger life, limb, health or create a reasonable apprehension of danger which renders the relationship unsafe for the party seeking relief, or be so unnatural and infamous as to make the marriage revolting to the non-offending spouse and render it impossible for that spouse to discharge the duties of marriage, destroying the basis for its continuance. Rakestraw v. Rakestraw, 717 So.2d 1284, 1287 (¶ 8) (Miss.Ct. App.1998). The chancellor did not itemize his fact finding on this issue. While such is preferable, it is not fatal.
¶ 15. "Generally, when there are no specific findings of fact, this Court often assumes that the chancellor resolved fact issues in favor of the appellee." Sarver v. Sarver, 687 So.2d 749, 757 (Miss.1997). The Court will assume that the "chancellor made determinations of fact sufficient to support its judgment ... and the Court will look to the evidence and see what state of facts, if any, will justify the decree." Id. Only a showing of a preponderance of the evidence is necessary to receive a divorce on the grounds of habitual, cruel and inhuman treatment. Smith v. *983 Smith, 614 So.2d 394, 396 (Miss.1993). The chancellor, after hearing the evidence presented in open court, determined that Mrs. Garriga had met her burden of proof. In looking at the record for sufficient evidence to support the chancellor, we note testimony as follows.
¶ 16. Mrs. Garriga presented evidence of her husband's adulterous relationship, violent rampages, and drunken stupors. Mrs. Garriga expressed a fear that Mr. Garriga might harm her. She testified that he drank a lot and always kept a flask of vodka with him. He would get drunk and stay out either very late or all night. After returning home on those occasions, Mr. Garriga would force himself on her. Mrs. Garriga testified that it was necessary to lock herself in the bathroom and sleep on the floor to get away from him. Mrs. Garriga continued her testimony by telling of an occasion when Mr. Garriga became angry and abandoned her in the parking lot adjacent to the beach in the predawn hours. Mrs. Garriga had to walk alone in the dark several blocks to reach a place of safety. She testified that she feared returning to her own home and opted instead to spend the night at the home of a friend.
¶ 17. Mrs. Garriga also testified that she and her daughter had to either hide evidence of fast food containers or eat at fast food restaurants without Mr. Garriga's knowledge. He would become enraged if he knew they had eaten fast food. Mrs. Garriga further testified that she was not allowed to buy her own clothing. Mr. Garriga bought all of her clothing for her. On one occasion Mr. Garriga threw clothing which she had purchased into the street. When Mrs. Garriga refused to return the clothing to the place of purchase, Mr. Garriga locked her out of their home.
¶ 18. The continuing nature of these acts amounted to a continuing condition which, taken as a whole, made further cohabitation and the discharge of Mrs. Garriga's marital duties impossible.
¶ 19. Mr. Garriga also suggests that his mental status renders him incapable of habitual, cruel and inhuman treatment. We decline to so hold.
¶ 20. This issue lacks merit.

III.

The court erred in not granting Vincent Garriga, the appellant, a divorce on the grounds of habitual cruel and inhuman treatment and by not awarding alimony to him.
¶ 21. Mr. Garriga counterclaimed for divorce on the grounds of habitual, cruel and inhuman treatment. Mr. Garriga failed to present any evidence in support of his claim. Because Mr. Garriga offered no proof of habitual, cruel and inhuman treatment, the court did not abuse its discretion by denying him a divorce on this ground. "The chancellor does not have the authority to `give' a divorce unless the facts and the law warrant it." Lewis v. Lewis, 602 So.2d 881, 883 (Miss.1992).
¶ 22. Of note is the fact that Mr. Garriga did, however, raise the issue of adultery. Even though Mr. Garriga did not plead adultery as a basis for divorce, the record suggests that the issue of Mrs. Garriga's adultery may have been tried by consent. It appears that the chancellor, in his September 3,1998 findings of fact, found that Mr. Garriga's charges of adultery were undenied and the adultery uncondoned. However, Mrs. Garriga's adultery was not the precipitating cause of the separation and subsequent action for divorce. It was the cruel, habitual and inhumane treatment suffered by Mrs. Garriga. In contrast, the adultery complained of by Mr. Garriga occurred a considerable time after the separation.
¶ 23. There can be but one divorce granted. Where each party has requested a divorce and offers proof sufficient to establish a basis for divorce, the chancellor must then determine which of the parties will be granted a divorce. Hyer v. Hyer, *984 636 So.2d 381, 384 (Miss.1994). In the present case, Mrs. Garriga was the first to file her divorce. She alleged as a basis for divorce conduct which occurred while the parties lived together. This conduct ultimately caused the parties's final separation.
¶ 24. Because Mrs. Garriga was the complainant, predicating her request for divorce on grounds which occurred while the parties lived together, it was not inappropriate, nor an abuse of discretion, for the chancellor to grant her petition, while denying that of Mr. Garriga. "In a situation where both parties are at fault, if a divorce is to be granted, the chancellor must determine which party's conduct was the proximate cause of the deterioration of the marital relationship and the divorce itself." Id.
¶ 25. Mr. Garriga also argues an entitlement to permanent periodic alimony alleging his only sources of income to be a disability check and aid from his parents. He argues that failure to grant him alimony was manifest error.
¶ 26. The reasonable needs of the parties are considered in determining whether to award alimony. Each award is decided on a case by case basis. Gray v. Gray, 562 So.2d 79, 83 (Miss.1990). The amount, if any, of the award is within the discretion of the chancellor. Id. Even though alimony and equitable distribution are different concepts, they should be considered together. When one expands the other must recede. Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss.1994). "If there are sufficient marital assets which, when equitably divided ..., will adequately provide for both parties, no more need be done." Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994).
¶ 27. The amount and type of marital assets must be determined along with whether those assets have remained intact or have been wasted by either party. The question of waste of marital assets was raised with regard to Mrs. Garriga. Evidence was presented which indicated that Mrs. Garriga used marital assets in furtherance of an extra-marital relationship. Any asset used by Mrs. Garriga that was not used for the general welfare of her marital relationship was wasted. Mr. Garriga should not be charged with gifts and trips financed by Mrs. Garriga to pursue an extra-marital romantic relationship. These amounts should be reimbursed to the marital estate or set-off from any distribution received by Mrs. Garriga.
¶ 28. Property distribution as related to divorce actions is an issue that has often frequented the appeals courts. Ferguson provided guidelines for the courts to use in determining equitable distribution issues incident to divorce. Even with these guidelines in place, each case must still be decided on a case-by-case basis. The term equitable does not necessarily mean equal but rather the distribution that is most fair to both parties.
¶ 29. The earning capacity, assets, income and need for financial security of each party should be considered in determining the distribution of marital assets. The Garrigas had a very lucrative rental business which provided them with a substantial income. In-kind distribution of this rental property would continue to provide an income for both Mr. and Mrs. Garriga after their divorce. "Partition in-kind is preferred where there is no substantial proof that a sale would better promote the parties' interests or that partition is not possible." Overstreet v. Overstreet, 692 So.2d 88, 91 (Miss.1997). "The burden is [on] the person seeking the sale to show that it is the only feasible method of division of the land." Overstreet, 692 So.2d at 90. Mrs. Garriga requested in her complaint that the jointly held rental properties be sold and the net proceeds be equally divided. No proof was offered that a sale was the only feasible method to divide the property. Absent this proof, the order of the chancery court to sell all property is error. With this in mind, the court ordered *985 sale of the real property jointly owned by Mr. and Mrs. Garriga is reversed and remanded for consideration of distribution in-kind.
¶ 30. Mr. Garriga's claim for periodic alimony can not be assessed until the equitable division is complete. The chancellor should then consider the need for periodic alimony once the equitable division is settled.
¶ 31. This issue is reversed and remanded for further consideration.

IV.

The court erred in granting a ten per cent management fee to Lisa Garriga, the appellee and by ordering the appellant to pay attorney fees and costs .
¶ 32. The court was within its authority to appoint a property manager until the properties were sold. If not Mrs. Garriga, then another agency would have been required to perform these same duties. Since Mrs. Garriga was already familiar with the daily operations of the business, the court's decision to allow her to manage the properties until they were sold is not unreasonable. The ten percent fee associated with this duty was fair and within industry standards.
¶ 33. Mr. Garriga suggests that attorney fees should only be awarded when a party lacks the ability to pay his own attorney. He asserts that because Mrs. Garriga has assets from which an attorney could be paid, no award of attorney fees should have been made to her. In addition to need based attorney fees, a court may award attorney fees as a punishment for clearly dilatory actions. Rule M.R.C.P.11(b), Miss.Code Ann. § 11-55-5 (Supp. 1999) The apparent purpose of the chancellor's award of attorney fees was to punish Mr. Garriga's dilatory actions in delaying the trial. While this is permissible, awards of attorney fees must be both fair and reasonable. Monroe v. Monroe, 745 So.2d 249, 253 (¶ 18) (Miss.1999). They should compensate only for the actual services and time involved, which may not otherwise be recouped or used. Id.
¶ 34. Neither our review of the chancellor's award nor the request for attorney fees satisfy the Court that Mrs. Garriga was awarded attorney fees for the time and service not otherwise subject to later recoupment or use at trial. To the extent that the fees awarded were for time and service used in the trial of August 1998, this award is an abuse of discretion by the chancellor. For these reasons, we reverse and remand for further consideration the award of attorney fees.

V.

The court erred in ordering Vincent Garriga, the appellant, to pay Moore and Powell, a CPA firm, in the amount of $4, 993.90.
¶ 35. In a domestic case, the court will not reverse a chancellor's findings unless it is shown that the ruling was manifestly wrong, clearly erroneous, or that the chancellor applied an erroneous legal standard. Johnson v. Johnson, 650 So.2d 1281, 1285 (Miss.1994). The supreme court has held that the payment of attorney fees and court cost are within the sound discretion of the chancellor. Martin v. Martin, 566 So.2d 704, 707 (Miss. 1990). Likewise, accounting fees are held to the same standard. As long as the fees are reasonable in nature, then the chancellor may use his discretion in assigning payment. Brooks v. Brooks, 652 So.2d 1113, 1119-20 (Miss.1995).
¶ 36. This assignment of error is without merit.
¶ 37. THE JUDGMENT OF THE JACKSON COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED IN PART AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
*986 BRIDGES, IRVING, LEE, MOORE, AND PAYNE, JJ., CONCUR. McMILLIN, C.J., AND SOUTHWICK, P.J., CONCUR IN RESULT ONLY. THOMAS, J., NOT PARTICIPATING.