# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00478-COA

**ANTHONY McGOVERN**                                    **APPELLANT**

**v.**

**TERA McGOVERN**                                         **APPELLEE**

DATE OF JUDGMENT:              04/26/2022
TRIAL JUDGE:                   HON. WAYNE SMITH
COURT FROM WHICH APPEALED:     PIKE COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:        S. CHRISTOPHER FARRIS
ATTORNEY FOR APPELLEE:         CASEN WAYNE CHOATE
NATURE OF THE CASE:            CIVIL - DOMESTIC RELATIONS
DISPOSITION:                   AFFIRMED IN PART; REVERSED AND
                               REMANDED IN PART - 10/03/2023
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J.,  GREENLEE AND SMITH, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     Anthony and Tera McGovern consented to a divorce based on irreconcilable differences in the Pike County Chancery Court with other issues to be decided by the court. The chancery court granted the divorce and entered a binding judgment deciding the issues of child custody and visitation, child support, payment of school tuition, payment of medical expenses, equitable distribution of property, alimony, attorney's fees, and contempt.

¶2.     Anthony appealed, claiming the court erred by (1) awarding child support greater than the statutory guidelines, (2) punitively fixing his visitation with his children, (3) determining the 2008 Chevrolet truck was marital property, (4) granting Tera 50% of the equity in the marital home, (5) failing to address his motion for contempt, and (6) awarding attorney's fees

without addressing the *McKee*[1] factors, without properly authenticating the fees, and in failing to consider Tera's ability to pay her own fees. We affirm the chancery court's judgment as to the issues on visitation, a 2008 Chevrolet truck, and the marital home. However, we reverse and remand as to the issues on child support, contempt, and attorney's fees.

## FACTS AND PROCEDURAL HISTORY

¶3.     Anthony and Tera were previously married from March 2009 to June 2012, which ended in a divorce. That first marriage produced no children. The two began seeing each other after the divorce, and in June 2014, Anthony and Tera had their first son together, J.M.[2] The parties remarried on October 15, 2015. The second marriage produced two more children, A.M. and K.M., born in December 2015 and in January 2017, respectively.

¶4.     A.M. was born with a rare genetic disorder that causes severe spinal issues. She must wear body brace(s) for several hours each day. The disorder also affects her lung and digestive functions. A.M. requires monthly specialized care with visits to facilities in Texas and Tennessee. Her disease is not well understood and involves the possibility of future, unexpected issues.

¶5.     Anthony was the main source of income for the family. He was both the owner and an employee of McGovern Unlimited, LLC, an oil consulting company. McGovern Unlimited relied on other companies to refer clients to Anthony. Once connected with a

---

[1] *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982).

[2] We use initials in the place of the minor children's names.

client, Anthony would travel and work in-person with the client, often for several weeks at a time. Tera took care of the children and maintained the household. She also occasionally worked with McGovern Unlimited and received roughly $30,000 per year in wages.

¶6. Anthony and Tera separated on March 9, 2021. They each filed competing divorce petitions. They entered into a joint consent to a divorce based on irreconcilable differences, with certain issues left to be determined by the court. Those initial issues were child custody and visitation, child support, payment of the children's school tuition, medical care, and equitable distribution of property. Additional issues were later added, including alimony, attorney's fees, and contempt.

¶7. The chancery court entered its final judgment on February 25, 2022. On child custody, the chancery court applied the *Albright*[3] factors and granted Tera physical custody of the children, while granting both Tera and Anthony joint legal custody. The court adjusted the visitation hours from the schedule set by the temporary order and ordered that Anthony should have visitation rights every weekend that he was home from work.

¶8. On the other issues, the chancery court found that Anthony was not a credible witness concerning his financial situation. The court stated that it was "disturbed by Anthony McGovern's lack of candor." The chancery court heard testimony from Barbara Givens, Anthony's accountant, who examined Anthony's tax returns. The court found that Anthony had a net income of $13,500 per month and had $10,300 in expenditures. The court ordered Anthony to pay $2,500 in child support to Tera. Furthermore, the court ordered Anthony to

---

[3] *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983).

pay for "any and all expenses related to the children's attendance at Parklane Academy, including tuition, book fees, after school care, activity and sport fees." The chancery court also ordered Anthony to pay for the children's college education, limited to the cost of a public university in Mississippi not covered by scholarships.

¶9. The chancery court noted that the children are covered by the Medicaid Program of the State of Mississippi and ordered that they continue to be enrolled in Medicaid so long as they are eligible. The court ordered that Anthony would be responsible to provide health insurance in the event that the minor children no longer are covered by Medicaid. This coverage would provide a deductible not to exceed $3,000 and would include medical, dental, drug, and optical coverage. Furthermore, the chancery court ordered that both parties would equally divide all out-of-pocket medical expenses.[4]

¶10. The chancery court addressed the equitable distribution of property by first analyzing the *Ferguson*[5] factors. The court found that Tera had helped accumulate assets and contributed to the marriage domestically through her care of the children. The court found that the marital home was a part of the marital estate through the family-use doctrine. The family had lived in the home for the vast majority of the marriage, and the children were raised in the home. The court found that the improvements in the home were made to accommodate a growing family. Based on the appraisal of the home and the remaining

---

[4] The court also ordered that Anthony would be responsible for 100% of the children's medical expenses if the children were not covered by insurance in accordance with the court's order.

[5] *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss 1994).

4

balance of the mortgage, the court found the equity in the home to be $120,500.

¶11. Next, the chancery court found that McGovern Unlimited was a marital asset. Although Anthony is the sole owner of the company, it was created during the course of the marriage, and Tera received employment payments and was active in the company. The court found that at the date of separation, McGovern Unlimited's bank account contained $97,367.67 but that Tera had removed $25,000 from this account, and Anthony had removed $20,000, leaving $52,367.67. Accordingly, the chancery court found that the balance was to be split between the parties as $47,367.67 to account for the extra $5,000 ($25,000 - $20,000) that Tera took out. The court ordered each party would receive $23,683.84.

¶12. The parties submitted a list of their personal property, separately noting their positions on each listed property's value. The chancery court noted discrepancies between those listed values when compared to the parties' filed financial statements. The court also found that Anthony's values were of questionable accuracy, that he was "evasive," and that he had failed to provide the balances due on loans.

¶13. The parties agreed that Anthony would receive three vehicles, with a value totaling $31,000, including the 2008 Chevrolet truck. Tera would receive a 2017 Toyota Sienna and 2019 Honda CRV, with a total value of $16,609.60. The parties also agreed that Tera would receive several bedroom items valued at $1,800. The parties agreed the remaining property would go to Anthony, with a total value of $58,795.

¶14. In total, the chancery court found that Anthony's equitable interest in assigned properties was $257,662.84, while Tera's total equitable interest was $18,409.60. The court

5

subtracted Tera's value from Anthony's value, leaving $239,253.24 to be divided equally, or $119,626.62 each. The court ordered Anthony to pay Tera that balance of $119,626.62 in four installments of $25,000 and one final installment of $19,626.22 over the course of the next year. In addition, the court ordered that Anthony would be responsible for the remaining car payments on the 2019 Honda CRV, as well as for providing and paying liability insurance coverage on this vehicle.

¶15. The chancery court found that Anthony's failure to be truthful and candid with the court unnecessarily increased Tera's attorney's fees. Therefore, the court ordered Anthony to pay $16,000 of Tera's attorney's fees.

¶16. On alimony, the court stated that the *Armstrong*[6] factors were considered, though the court did not address each factor separately. Tera was denied alimony because she had sufficient support and awards in the divorce. The court reasoned that Tera was a young woman who had the ability to work and that the marriage had been short. The court did not address Anthony's allegation of Tera's contempt in its original order.

¶17. Anthony filed a timely motion to alter or amend the judgment in March 2022. The chancery court granted the motion in part and denied it in part. The court amended its final judgment, finding that the 2019 Honda CRV was not a part of the marital estate. Accordingly, the court found that Anthony was no longer responsible for paying that debt nor for insuring the vehicle. The chancery court addressed Anthony's motion for contempt and denied the motion, stating Anthony had failed to properly serve Tera under the Mississippi

---

[6] *Armstrong v. Armstrong*, 618 So. 2d 1278 (Miss. 1993).

6

Rules of Civil Procedure.[7]

## STANDARD OF REVIEW

¶18.    This Court has a limited standard of review in domestic relations cases. *Myrick v. Myrick*, 186 So. 3d 429, 431 (¶10) (Miss. Ct. App. 2016).  "We will affirm the chancellor's ruling if it is supported by substantial evidence unless the chancellor abused his discretion, clearly erred, or applied the wrong legal standard."  *Stephenson v. Stephenson*, 332 So. 3d 360, 362 (¶6) (Miss. Ct. App. 2021).  We review questions of law de novo. *Id.*

## DISCUSSION

¶19.    Anthony claims the chancery court erred (1) by setting the child support obligation and private school tuition in excess of the child support guidelines, (2) by punitively modifying Anthony's custody and visitation, (3) by determining the 2008 Chevrolet truck was marital property, (4) by granting Tera fifty percent of the equity in the marital home, (5) by failing to address the Pontiac GTO and the contempt of Tera, and (6) by awarding attorney's fees to Tera that were not authenticated and for not applying the *McKee* factors. We affirm the chancery court's judgment on the issues of visitation, the Chevrolet truck, and the marital home.  However, we reverse and remand on the issues of child support, contempt, and attorney's fees.

### I.    Child Support

¶20.    Anthony claims that the chancery court erred by awarding Tera child support in excess of the child support guidelines.

---

[7]  Anthony did not serve Tera under Mississippi Rule of Civil Procedure 81.

7

¶21.    "A chancery court has discretion in determining an award of child support." *Gunter v. Gunter*, 281 So. 3d 283, 285 (¶3) (Miss. Ct. App. 2019).  Mississippi Code Annotated section 43-19-101(1) (Rev. 2015) provides guidelines for ordering child support based on a percentage of the party's adjusted gross income (AGI) set by the number of minor children the party is responsible for supporting.  When a party's income is between $10,000 and $100,000, there is a rebuttable presumption that the corresponding child support is reasonable.  *Id.*  However, when the party's AGI is more than $100,000 or less than $10,000, the court shall make a written finding as to whether the application of the guidelines is reasonable.  Miss. Code Ann. § 43-19-101(4).

¶22.    The chancery court found that Anthony's net income was $13,500 per month, or $162,000 per year.  As Anthony has three children for which he is responsible, the guidelines provide that 22% of this income ($35,640) should be set as child support; which is $2,970 per month.  The chancery court set Anthony's child support at $2,500 per month—below the statutory guidelines—but also ordered that Anthony pay for "any and all expenses related to the children's attendance at Parklane Academy, including tuition, book fees, after school care, activity and sport fees."

¶23.    The record does not explicitly provide the cost of tuition at Parklane Academy, but Anthony alleges in his appellate brief that the cost is $750 per month.  Just considering the tuition alone, Anthony's child support payment would rise above the statutory guidelines ($2,500 + $750 = $3,250).  Furthermore, Anthony argues that the other "any and all" expenses of Parklane Academy awarded by the court would add an additional $1,565 per

month, resulting in a total monthly child support payment of $4,815.

¶24. The additional $1,565 is disputed by Tera in her appellee's brief. She argues that the additional amount does not exist because the children do not incur those expenses. For instance, Tera argues that the children take their lunch to school, so the cafeteria plan cost would be irrelevant. Further, she argues that the children do not incur sport or activity fees at school because those activities take place outside of school and are not subject to the court's order. However, regardless of whether the costs were occurring at the time she filed her brief, those expenses could occur in the future, requiring Anthony to pay an unknown greater future amount in child support. Tera even testified the children sometimes pack their lunch, and sometimes they eat at the school:

> Q. Okay. Do you know how much the school lunches are a month?
> A. Well, it really varies month to month.
> Q. Because sometimes they bring their lunch?
> A. Sometimes they bring it, sometimes they enjoy eating at school.

Furthermore, Tera's Rule 8.05 financial statement, UCCR 8.05, listed her four children's school expenses as being $1,579 per month. Realizing that Tera has four children attending Parklane, while Anthony is only responsible for three of them, the estimated three-fourths of $1,579 as child support would still be greater than the statutory guidelines.

¶25. The chancery court's judgment, as it stands, potentially awards Tera child support far greater than what was accounted for by the chancellor. "This Court has made clear that the judgment must be complete within itself, . . . leaving open no matter or description or designation out of which contention may arise as to meaning." *Lindsay v. Lindsay*, 303 So. 3d 770, 780 (¶27) (Miss. Ct. App. 2020) (quoting *Davis v. Davis*, 829 So. 2d 712, 714 (¶9)

9

(Miss. Ct. App. 2002)). The chancery court's order was not clear and not "complete" within itself. Therefore, we reverse and remand this issue back to the chancery court to reconsider the children's school tuition and additional costs and to order child support after consideration of those findings.

## II.     Child Custody and Visitation

¶26.    Anthony claims that the chancery court acted punitively in setting his visitation. He argues that the court was "[o]bviously . . . angry with [him] over the 8.05 financial affidavit and his income."

¶27.    There is no evidence in the record that the court acted punitively in its child custody and visitation award. The record supports the chancery court's adjustments to the temporary order's visitation schedule. There was evidence before the chancellor that Anthony drinks too much alcohol, which affects his behavior. Pictures were admitted showing Anthony "passed out," presumably from consuming too much alcohol. Several witnesses testified to Anthony's heavy alcohol use. Karla Leuthuaser, a witness who was dating Anthony during his separation from Tera, testified that Anthony would get intoxicated and exhibit "belligerent" behavior such as running and screaming in the yard. She also testified that Anthony kept firearms in his home and vehicle.

¶28.    Anthony argues that there was no testimony that the children did not enjoy spending time with him. However, the chancery court must consider in child custody cases what is in the best interest and welfare of the children. *Albright*, 473 So. 2d at 1005. There was testimony that the children felt unsafe with Anthony, especially when he had been drinking,

10

though the chancellor did not include this finding in his analysis. When viewed as a whole, the chancellor's *Albright* analysis was supported by the record and was not an abuse of discretion.

### III. The Chevrolet Truck

¶29. Anthony claims that the 2008 Chevrolet truck was not part of the marital estate because it was given to his son years before the divorce. The truck was purchased during the marriage, and it was titled in Anthony's name at the time of the divorce. "Assets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties' separate estates prior to the marriage or outside the marriage." *Hemsley v. Hemsley*, 639 So. 2d 909, 914 (Miss 1994). Anthony did not prove that the truck should be considered as outside the marital estate. The chancery court did not err by including the 2008 Chevrolet truck in the marital estate.

### IV. Equity in the Marital Home

¶30. Anthony claims that the chancery court erred by granting Tera 50% of the equity in the marital home. He argues that he had increased the equity by adding an addition to the home with his own money, not with marital funds. Anthony claims he is entitled to more than a 50% split in the property.

¶31. The chancery court analyzed the *Ferguson* factors and found that the marital home was a part of the marital estate under the family use doctrine. The McGovern family had lived at the home for over seven years, and the court found that any additions made to the

11

home were made to accommodate a growing family.

¶32.    Anthony cites *Palmer v. Palmer*, 121 So. 3d 260, 263 (¶10) (Miss. Ct. App. 2013), as an example of a case where this Court reversed a chancellor's award of 50% equity in a marital domicile based on the family-use doctrine.  This case is distinguishable.  In *Palmer*, the home's mortgage had already been completely paid off by the husband prior to the marriage.  *Id.* at (¶11).  While the wife had provided domestic contributions, her only substantial financial addition to the house was a $2,000 payment for new carpet and floor tiles.  *Id.* at (¶10).  In addition, there were several other factors favoring reversal, including the husband's old age and failing health, the husband's inability to work, and the fact that the husband would be forced to sell the house to pay the wife her share of the equity.  *Id.* at 263-64 (¶¶11-12).

¶33.    Unlike *Palmer*, Anthony was financially stable, was still able to work, and could afford to keep the marital home and pay Tera her portion of the equity.  The record reflects that Anthony closed on the home in 2009, and he and Tera moved in there immediately.  While Anthony may have made all the financial payments on the home, the majority of these payments happened while he and Tera were married and raising a family.

¶34.    The evidence supports the chancery court's finding that the marital home was a marital asset under the family-use doctrine.

## V.    The Pontiac GTO and Contempt

¶35.    Anthony claims the chancellor erred by failing to address his motion for contempt.  Anthony filed his "Motion to Cite Plaintiff for Contempt" on October 22, 2020, alleging that

12

Tera broke the terms of the chancery court's temporary order. Specifically, the motion claimed that Tera took possession of the 2006 Pontiac GTO, which broke the term in the temporary order stating that "[the parties] shall each have temporary use and possession of the vehicle they routinely use." It was later determined that Tera sold the GTO, which also broke the agreement not to dispose of any marital property.[8]

¶36. Tera filed a response to the motion for contempt, and the issue was a topic during the hearings. The court, however, did not address the contempt issue in the initial decree of divorce. In his "Motion to Alter or Amend Final Judgment," Anthony argued that the court did not address Tera's contempt. The chancery court amended the judgment but denied Anthony relief, stating that he had never served Tera as required by the Mississippi Rules of Civil Procedure, apparently a reference to Rule 81. The court did note that Tera took possession of the Pontiac GTO and sold it for $4,500.

¶37. On appeal, Anthony reasserts his claim that the chancery court did not address the substance of his allegation of contempt. In her brief on appeal, Tera does not argue lack of service. She argues that the chancery court addressed the contempt issue and that it was not an abuse of discretion to fail to cite her for contempt.

¶38. Chancery courts are given substantial discretion in contempt matters. *Brown v. Brown*, 329 So. 3d 544, 561 (¶51) (Miss. Ct. App. 2021). Also, "[a] Chancery court's continuing jurisdiction to enforce a judgment does not waive the requirement for a Rule 81 summons in contempt actions." *Hanshaw v. Hanshaw*, 55 So. 3d 143, 146 (¶9) (Miss. 2011).

---

[8] Anthony did not refile or amend his motion for contempt to address the issue of the sale of the GTO.

"Where a party does not waive proper notice of a contempt action, we have reversed the contempt finding and remanded the matter to the chancery court." *Id.*

¶39. Anthony filed a motion for contempt but apparently did not serve Tera under Rule 81 of the Mississippi Rules of Civil Procedure. We have recognized that such service may be waived if an objection is not raised to lack of notice and if a party argues the merits of the contempt motion. *In re Spencer*, 985 So. 2d 330, 340 (¶34) (Miss. 2008). The docket shows that Tera responded to the contempt motion.[9] When Tera consented to a divorce based on irreconcilable differences, the agreement specifically included that the issue of the "liability of the parties under the temporary order and whether each party is in contempt" was to be addressed by the court. The record shows that Tera consented to the chancery court addressing the issue of contempt stemming from the temporary order, that she responded to Anthony's motion for contempt, and that the issue was addressed during the hearings. However, the chancery court did not address the merits of Anthony's contempt motion, but, instead, the court found that service was improper under Rule 81, and, therefore, the issue was not properly before the court. Because of Tera's "consent" and because the issue was brought before the court without any apparent objection to service by Tera, we remand this issue of contempt to the chancery court to reach the substance of the issue.

## VI. Attorney's Fees

¶40. Anthony claims that the chancery court erred by ordering him to pay $16,000 of Tera's attorney's fees. He argues that the fees were not properly authenticated, that the court did

---

[9] We do not have Tera's response to the motion for contempt in the record on appeal.

not support its decision with findings of facts under the *McKee* factors, and that the court failed to consider Tera's award of $119,626.22 in equitable distribution.

¶41. This Court "will not reverse a trial court's award of attorney's fees unless there is a 'manifest abuse of discretion in making the allowance.'" *Gilmer v. McRae*, 355 So. 3d 219, 225 (¶18) (Miss. 2022) (quoting *Bay Point Props. Inc. v. Miss. Transp. Comm'n*, 304 So. 3d 606, 608 (¶7) (Miss. 2020)). Generally, "an award of attorney's fees is appropriate in a divorce case where the requesting party establishes an inability to pay." *Hammond v. Hammond*, 327 So. 3d 173, 182 (¶29) (Miss. Ct. App. 2021) (quoting *Gray v. Gray*, 745 So. 2d 234, 239 (¶26) (Miss. 1999)). In these types of cases, "a chancellor's award or denial of fees should be supported by findings of fact regarding the *McKee* factors." *Vandenbrook v. Vandenbrook*, 292 So. 3d 991, 1004 (¶46) (Miss. Ct. App. 2019) (citing *Grice v. Grice*, 726 So. 2d 1242, 1255 (¶51) (Miss. Ct. App. 1998)).

¶42. The chancellor has the discretion to grant attorney's fees for other issues, such as the party's misconduct. *Huseth v. Huseth*, 135 So. 3d 846, 860 (¶45) (Miss. 2014). In cases where one party prolonged litigation by concealing assets or refused to comply with discovery requests, attorney's fees have been upheld. *See Myers v. Myers*, 741 So. 2d 274, 281 (¶31) (Miss. Ct. App. 1998); *Russell v. Russell*, 733 So. 2d 858, 863 (¶16) (Miss. Ct. App. 1999). In cases involving dilatory tactics and party misconduct, the inability to pay is not a requirement because the award of attorney's fees is "not a reward, but reimbursement for the extra legal costs incurred as a result of the opposing party's fraudulent actions." *A & L Inc. v. Grantham*, 747 So. 2d 832, 845 (¶60) (Miss. 1999) (citing *Pittman v. Pittman*, 652

15

So. 2d 1105, 1111-12 (Miss. 1995)). The award of attorney's fees should be "both fair and reasonable," and "should compensate only for the actual services and time involved, which may not otherwise be recouped or used." *Garriga v. Garriga*, 770 So. 2d 978, 985 (¶33) (Miss. Ct. App. 2000) (citing *Monroe v. Monroe*, 745 So. 2d 249, 253 (¶18) (Miss. 1999)).

¶43.     Here, the chancery court ordered Anthony to pay $16,000 out of Tera's $31,119.15 in attorney's fees. The chancellor stated that Anthony's "failure to be truthful and candid to the court caused the billable hours of [Tera's attorney] Mr. Holmes to be needlessly increased." Because there was no mention of Tera's ability to pay, the chancery court's award seems to be wholly based on Anthony's actions. At the hearing, Tera initially argued that Anthony's problems with his attorneys resulted in three continuances which caused her attorney to "redo several things." Later, Tera argued that Anthony's lack of candor with his Rule 8.05 financial statement required the filing of sixty exhibits. While Tera's attorney bill is in the record, it is not clear what proportion of the fees can be attributed to Anthony's misconduct or dilatory actions. A review of the itemization shows some redundancy with motions to withdraw as Anthony's counsel and motions to continue the trial. However, the record is unclear how the $16,000 in attorney's fees were caused by Anthony's actions.

¶44.     A similar case is *Hensarling v. Hensarling*, 824 So. 2d 583, 592 (¶27) (Miss. 2002). There, one party had failed to disclose assets in discovery, causing the other party to spend time and effort in locating the missing assets. *Id.* The chancellor awarded the aggrieved party $20,000 of her roughly $31,000 total attorney's fees. The supreme court reversed and remanded, finding that the award was arbitrary. *Id.* at (¶29). The court found that the record

16

in that case was not detailed enough to show how the award correlated with the expenses incurred by the aggrieved party. *Id.*

¶45. Likewise, we find that the $16,000 awarded to Tera as arbitrary. The record does not explain how Anthony's actions correlated with over half of Tera's legal expenses. Therefore, we reverse and remand the award of attorney's fees for reconsideration.

¶46. Tera has also filed a motion for attorney's fees on appeal. Because we have remanded this case on several issues, the issue of attorney's fees on appeal is premature. *See Huseth*, 135 So. 3d at 861 (¶47) (denying request for attorney's fees on appeal, in part, because the party did not prevail on appeal). As such, Tera's motion for appellate attorney's fees is denied.

**CONCLUSION**

¶47. We affirm the chancery court's judgment on the issues of visitation, the equitable distribution of the 2008 Chevrolet truck, and the marital home. However, we reverse and remand to the chancery court the issues of child support, contempt, and attorney's fees. On remand, the chancery court should make findings of fact regarding the children's school tuition and additional costs and consider its findings in setting child support. The chancery court should address the contempt claim centered around the Pontiac GTO. Finally, the chancery court should reconsider the award of attorney's fees.

¶48. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WESTBROOKS, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**

17